## Cadmus *versus* Jackson.

1. A terre-tenant may have a writ of error when it is necessary to extricate his title from jeopardy.

2. The rule is that no person can bring a writ of error unless he is a party or privy to the record, or is prejudiced by the judgment : he who would have had the thing if the erroneous judgment had not been given.

3. Young owned land subject to a mortgage given by a former owner ; after Young's death the land was sold to Keenan on a judgment for unpaid taxes, recovered in Young's life ; the land was afterwards sold to Cadmus under an order of the Orphans' Court for the payment of Young's debts ; the mortgagee proceeded on the mortgage against the mortgagor and Keenan. Cadmus was admitted to defend ; there was a verdict against the mortgagor and Keenan, and *for* Cadmus. *Held*, that Cadmus could bring a writ of error.

4. An Orphans' Court sale is a judicial sale, and divests the lien of mortgages and all debts that can be ascertained in moneys numbered.

5. A mortgage given by a former owner is a debt of the decedent who dies seised of the estate, as truly as if he had made the mortgage himself ; and is not within the protection of the Act of April 6th 1830.

6. A sale for taxes assessed after a mortgage has been recorded will not divest its lien.

7. The validity of a sale of land on a judgment for taxes, cannot be impeached by evidence that the taxes had been paid before the rendition of the judgment.

8. Land of a decedent was sold for the payment of debts ; a mortgagee in a mortgage given by a former owner, came before the auditor and received the most of his debt. *Held*, that the title of a purchaser at such sale was not carried back by relation to the date of the mortgage.

9. The personal representatives of Young were not warned before the execution issued on the judgment for taxes ; the sale to Keenan was therefore under void process, and he took no title.

ERROR to the District Court of *Philadelphia*.

[Cadmus *v.* Jackson.]

This was a *scire facias sur mortgage* by Ebenezer Jackson, assignee, &c., against John Dickinson, with notice to terre-tenants, issued September 30th 1863, and served on James M. Keenan, terre-tenant. The death of the defendant being suggested, Hawkins, his administrator, was substituted. Michael C. Cadmus was afterwards, on his own application, allowed to defend as terre-tenant.

The mortgage was dated September 1st 1834, from Dickinson to Harper, to secure $2359.59, and James Young became owner of the premises bound by it, May 27th 1842. The city of Philadelphia, May 19th 1859, entered a claim against Young for taxes of 1856, which had in fact been paid by Young February 2d 1859. To a *scire facias* on the claim issued September 10th 1859, the sheriff returned "made known by posting" a copy of the writ on the premises, and publication in a newspaper, "agreeably to the Act of Assembly." Judgment was entered November 26th 1859 for $99.90, for want of an affidavit of defence. Young died January 27th 1860, and without any *scire facias* to his personal representatives, a *levari facias* issued on the tax judgment, February 17th 1860, under which the property was sold to Keenan for $20, and deed made in September of the same year.

On the 19th of October 1860, the Orphans' Court of Philadelphia issued an order to the administrators of Young to sell the premises for the payment of his debts. They were sold under that order on the 20th of November 1860, to Cadmus, for $2725. The sale was confirmed December 20th 1860, and the deed of the administrators delivered to Cadmus and recorded on the 22d.

Jackson appeared by counsel before the auditor who distributed the estate of Young, and claimed, and there was awarded to him, the sum of $2042.98 on account of the mortgage.

On the trial, before Hare, J., the record of all the proceedings in relation to the tax sale were offered by the plaintiff and admitted against the objection of Cadmus, who excepted to the admission. Cadmus offered to prove by J. N. Brown, Esq., that he was the attorney of the administrators of Young, that he took the receipt for the taxes, 1856, to Mr. Poulson, solicitor for the receiver of taxes, the attorney of record in the said suit and execution, City *v.* Young, who gave him an order to the sheriff to stay the said sale, which order he delivered to the sheriff before the said sale. The offer was overruled, and an exception taken. Cadmus submitted the points contained in the specification of errors, which were denied. The jury found against Hawkins and Keenan the whole amount of the mortgage, and *for* Cadmus; but, on a reserved point, judgment was entered for $763.34, the balance after deducting the amount awarded to Jackson by the auditor. The writ of error was taken by Cadmus alone.

[Cadmus v. Jackson.]

The errors assigned were :—

1. Admitting the record of tax claim and the proceedings thereunder,

2. Overruling the evidence offered to be proved by J. N. Brown.

3. Refusing to charge, " That if the jury should find that the tax for which the property was sold had been paid before the filing of the claim therefor, and no *scire facias* had issued to the administrators of James Young, deceased, as required by Act of Assembly, that the purchaser at the tax sale acquired no title to the premises in question."

4. Refusing to charge, " That the legal title to the said premises, after the death of James Young, and after the said tax sale, was in the heirs of Young, subject to the lien of the debts of the decedent, and that the sale of the same by order of the Orphans' Court for payment of said debts conveyed a good title to Michael C. Cadmus, the purchaser thereof at said sale, which title related back to the date of the mortgage on which this suit is brought."

5. Charging the jury to find for the plaintiff for the amount of the mortgage as against the defendant Hawkins, administrator of Dickinson and Keenan.

6. Entering judgment on the point reserved for plaintiff against Hawkins, administrator, and Keenan, for $763.64, the unpaid balance of said mortgage.

The defendant in error moved to quash the writ of error, on the ground that there was no verdict or judgment against Cadmus.

*W. S. Peirce* and *E. K. Price*, for plaintiff in error.—Terretenant may take defence ; and is a proper party to the suit: it is error to reject him as defendant: Fraley v. Steinmetz, 10 Harris 437 ; Roberts v. Williams, 5 Wh. 170 ; Reigart v. Ellmaker, 6 S. & R. 44 ; Mevey's Appeal, 4 Barr 80.

The title to Young was not divested by the tax sale, his representatives having two years to redeem: Purd. 752, pl. 36, 37, Acts 1856 and 1849 ; Hess v. Potts, 8 Casey 407 ; Perry v. Brinton, 1 Harris 202.

The tax sale was void, because the tax of 1856, for which it was sold, had been paid: Delaney v. Gault, 6 Casey 63 ; Baird v. Cahoon, 5 W. & S. 540.

An Orphans' Court sale is a judicial sale, and discharges the premises of a mortgage given by a former owner: Moore v. Shultz, 1 Harris 98 ; Bowers v. Oyster, 3 Pa. Rep. 240 ; Corporation v. Wallace, 3 Rawle 109.

It was a sale for the mortgage-debt, and carried the purchaser's title by relation to the date of the mortgage in 1834: McCall v. Lennox, 9 S. & R. 302 ; Brown v. Johnson, 4 Rawle 146 ;

[Cadmus *v.* Jackson.]

Jaques *v.* Weeks, 7 Watts 270; Kellam *v.* Janson, 5 Harris 467; Perry *v.* Brinton, 1 Id. 202, and 5 Mo. 169. A sheriff's sale for interest or part of principal, discharges the lien of the entire mortgage-debt: Berger *v.* Hiester, 6 Wh. 210; Clarke *v.* Stanley, 10 Barr 472; Bank *v.* Chester, 1 Jones 287.

Cadmus is a terre-tenant and may come in and take defence, and consequently have a writ of error, if error be committed, to give trouble to himself or title: Fraley *v.* Steinmetz, 10 Harris 437; Roberts *v.* Williams, 5 Wh. 170; Reigart *v.* Ellmaker, 6 S. & R. 44; Mevey's Appeal, 4 Barr 80. The *sci. fa.* on mortgage is *wholly in rem:* Wickersham *v.* Fetrow, 5 Barr 260.

Jackson having accepted purchase-money paid by Cadmus, cannot dispute his title: Stroble *v.* Smith, 8 Watts 280; Hamilton *v.* Hamilton, 4 Barr 193; Smith *v.* Warden, 7 Harris 424.

Jackson's counsel's cases are not to the point, because if Jackson can make title to the premises in question, under this mortgage, it must be to sell a title paramount the Orphans' Court sale; or to take from Cadmus the *very title* he holds, if anything. There is an utter contradiction in the two judgments. Keenan's title was as much discharged by the Orphans' Court sale, as ever it can be under this judgment against him: Morris *v.* Garrison, 3 Casey 226. The court will "modify" the judgments as they ought to be entered: Purd. 928.

*T. E. McElroy*, for defendant in error.—It is a general rule that no person can bring a writ of error to reverse a judgment who is not party or privy to the record, or prejudiced by the judgment: 2 Saunders's Rep. 45, note 6; Fotterall *v.* Floyd, 6 S. & R. 315, 320; Strange 683; 1 Tr. & H. Pr. 602.

Even in case of *bail*, he cannot sue out a writ of error, and assign errors in judgment against his principal: Cro. Car. 481, 575, 300, 561, 408; Hylton's Lessee *v.* Brown, 1 W. C. C. R. 343–8; Vanhorn *v.* Frick, 3 S. & R. 278.

He only who is interested in a judgment can reverse it on error: Steel *v.* Bridenbach, 7 W. & S. 150; Watson *v.* Willard, 9 Barr 89; Chahoon *v.* Hollenback, 16 S. & R. 425; Catlin *v.* Robinson, 2 Watts 373, 379.

No person but one who has a *direct interest* in the cause can appeal from a judgment. *He cannot come between the parties who are concluded by it:* Morris *v.* Garrison, 3 Casey 226; Steel *v.* Bridenbach, 7 W. & S. 150; Watson *v.* Willard, 9 Barr 89, 92; Reigart *v.* Ellmaker, 6 S. & R. 44; Clippenger *v.* Miller, 1 Pa. Rep. 64, 72.

In Pennsylvania lands are mere chattels for the payment of debts, hence a judgment binds *only the interest defendant has therein*, and an execution will not be stayed because he has none:

[Cadmus v. Jackson.]

Insurance Co. v. Ketland, 1 Binn. 499. The owner's remedy is trover or replevin against sheriff's vendee, if his goods are seized upon execution against some one else, *but he can't have it against the sheriff:* Shearick v. Huber, 6 Binn. 2; Walters v. Pratt, 2 Rawle 265.

The debtor's title only is sold by the sheriff: Boas v. Updegrove, 5 Barr 518; Harrison v. Waln, 9 S. & R. 318; Cooper v. Gardiner, 3 A. & E. 211; Mitchell v. Hamilton, 8 Barr 486; Beekman's Appeal, 2 Wright 385; Van Billiard v. Nace, 1 Grant R. 233; Jarrett v. Tomlinson, 3 W. & S. 114; Neel v. The Bank, 1 Jones 18.

If Cadmus can reverse these judgments, it can be only upon the ground that they can be pleaded against him as estoppels in some other suit. The mortgage has never bound his estate since it came into his possession: Dengler v. Kerchner, 1 Harris 38. To s. p. see Chahoon v. Hollenbach, 16 S. & R. 425; Clippenger v. Miller, 1 Penna. R. 64; Catlin v. Robinson, 2 Wright 373; Mitchell v. Hamilton, 8 Barr 486; Drum v. Kelly, 10 Casey 415; Silverthorn v. Townsend, 1 Wright 263; Haskins v. Low, 5 Harris 64; Eberhart's Appeal, 3 Wright 509. The verdict in the *sci. fa.* is conclusive of the amount due on the mortgage: Roberts v. Williams, 5 Wh. 187.

A *sci. fa. sur judgment,* though a proceeding *in rem,* is *merely against defendant's interest:* Mitchell v. Hamilton, 8 Barr 486–8–91; Drum v. Kelly, 10 Casey 415.

A judgment in foreign attachment, though a proceeding *in rem,* will not make a sale of a third person's property under it good: Megee v. Beirne, 3 Wright 50; Taylor v. Carryl, 12 Harris 259; 2 Sm. L. C. (Am. Ed.) 689.

As to errors assigned:—

Where the *sci. fa.* issues against defendant, with notice to terretenants generally, *without warning any one,* a party desirous of pleading discharge of the lien *must prove that he is terre-tenant:* Silverthorn v. Townsend, 1 Wright 263.

The record of the tax sale was offered to show that *at the time of the Orphans' Court sale* to Cadmus, *the title bound by the mortgage* was outstanding in another than the decedent, and that *therefore* the mortgage was not discharged by that sale.

The mortgage was not discharged by the sale for taxes, the latter having been assessed subsequently to the former: Act of 23d January 1849, § 4, Pamph. L. 686; Perry v. Brinton, 1 Harris 202.

The sheriff's sale for taxes passed a *base fee* to Keenan, subject to the mortgage, leaving in the heirs of Young not an *equity of redemption,* but a right to redeem the land *within* the time limited by the Act of Assembly, *but not afterwards:* Claypool v. Dorsey,

[Cadmus *v.* Jackson.]

4 Am. L. J. (N. S.) 563; Gault's Appeal, 9 Casey 94; Delaney *v.* Gault, 6 Casey 63; and when redeemed to hold it subject to the mortgage: see Powell on Mortgages, chap. 1, pp. 4, 5, 6; Id., chap. 2, pp. 13, 14; Craft *v.* Webster, 4 Rawle 242.

A sheriff's sale divests *all* the title of the defendant in the execution: Fox *v.* Heffner, 1 W. & S. 372; Hoyt *v.* Koons, 7 Harris 277; Steiner *v.* Coxe, 4 Barr 13; Naglee *v.* Albright, 4 Wh. 291; Stonebreaker's Appeal, 8 Barr 155; Hess *v.* Potts, 8 Casey 407; Griffith *v.* Cochran, 5 Binn. 87, 105; Martin *v.* Willink, 7 S. & R. 298; Act of 13th May 1856, § 11, Pamph. L. 568.

The rule of *caveat emptor* applies to an Orphans' Court sale: Vandever *v.* Baker, 1 Harris 121; King *v.* Gunnison, 4 Barr 171; McFarland's Estate, Id. 149; Bickley *v.* Biddle, 9 Casey 276; Bashore *v.* Whisler, 3 Watts 490; Kline's Appeal, 3 Wright 463; Diehl's Appeal, 9 Id. 407.

Defendant in error is not estopped from proceeding on his mortgage by the receipt of the purchase-money of the Orphans' Court sale, as he does not allege that that sale was *void*, but that it passed nothing to Cadmus but a *redemption right:* see Patterson's Estate, 1 Casey 71; Bradley *v.* O'Donnell, 8 Id. 279; Canon *v.* Campbell, 10 Id. 309; Catlin *v.* Robinson, 2 Wright 378; Irvine *v.* Campbell, 6 Binn. 118; Creigh *v.* Shatto, 9 W. & S. 82.

Cadmus cannot set up the payment of taxes of 1856 to avoid the effect of the sheriff's sale, for no one can do this but the defendant or his heirs; nor can he object to the want of a *sci. fa.* to the personal representatives of James Young: Bennet *et ux. v.* Fulmer, xxii. Leg. Int. 404.

The Orphans' Court sale did not divest the mortgage, *because* the title bound thereby was *outstanding* in another at the time of the sale: Byrod's Appeal, 7 Casey 241; Fisher's Appeal, 9 Id. 294; Hoffman's Appeal, 8 Wright 95.

The estate Cadmus bought was a mere right, subject to the mortgage, and he was bound to redeem the premises within the time limited. This he did not do, and therefore *has no title.* For this reason defendant in error was entitled to a verdict and judgment against him, for he is not terre-tenant, and had no right to defend: Silverthorn *v.* Townsend, cited above.

The opinion of the court was delivered, May 15th 1866, by

WOODWARD, C. J.—The questions to be decided in this case, including the motion to quash the writ of error, cannot be made intelligible without first stating with considerable precision the facts out of which those questions grew. We will begin therefore at the beginning, and proceed by that natural order in which the events occurred.

[Cadmus *v.* Jackson.]

John Dickinson being the owner of a house and lot on the north side of Filbert street, in the city of Philadelphia, made a mortgage of the premises to Charles A. Harper on the 1st of September 1834, to secure a debt of $2359.59. By sundry mesne conveyances the title to the premises vested in James Young in 1842, subject to the mortgage.

On the 19th May 1859 the city of Philadelphia entered a claim in the Common Pleas against James Young for registered taxes of 1856, and on 10th September 1859 issued a *scire facias* thereon, which was returned by the sheriff, "made known by posting on the premises and by publication in a newspaper."

November 26th 1859.—Judgment for want of an affidavit of defence.

December 1st 1859.—Damages assessed at $99.90.

January 27th 1860.—James Young died intestate leaving a wife and five children, two of whom were minors.

February 17th 1860.—*Levari facias* issued upon the above judgment without any substitution of personal representatives by *scire facias.*

September 1860.—Sheriff's deed to James Keenan for the premises sold upon the above writ, consideration $20.

Such was the derivation of Keenan's title, who is upon the record as one of the terre-tenants. Michael C. Cadmus, the other terre-tenant, derived his title as follows:—

February 17th 1860.—Letters of administration upon the estate of James Young were granted to Hoopes & Lewis.

October 19th 1860.—On petition of the administrators the Orphans' Court ordered the premises to be sold for payment of debts of decedent.

November 20th 1860.—Sale to Michael C. Cadmus for $2725.

December 22d 1860.—Deed administrators to Cadmus in pursuance of said sale.

May 31st 1862.—Report of auditor distributing proceeds of the estate of James Young, deceased, including proceeds of above sale.

Ebenezer Jackson, to whom the said mortgage had been assigned, and who was then the owner of it, appeared before the auditor, by his counsel, and obtained $2042.93 upon his mortgage, leaving due thereon a balance that was afterwards ascertained to amount to $765.64.

On the 1st October 1863, Jackson issued the *sci. fa.* (which is the present suit) against Dickinson, the original mortgagor, with notice to terre-tenants. The death of Dickinson was afterwards suggested, and William Hawkins, his administrator, was substituted. Keenan was served as a terre-tenant, and Cadmus came in on his own application and was permitted to defend as a terre-tenant.

[Cadmus v. Jackson.]

On the 16th November 1864, the cause came to trial, when a verdict was rendered for plaintiff for $3026.17, as to Hawkins and Keenan, and for defendant as to Cadmus, and afterwards the court ordered judgment upon reserved points against Hawkins, administrator, &c., and Keenan for $765.64, the balance due to Jackson on the mortgage.   No judgment appears to have been entered on the verdict in favour of Cadmus.

Upon this state of facts the counsel for the defendant moves to quash the writ of error, and argues that as neither Hawkins nor · Keenan object to the judgment that was rendered against them, and as there was neither verdict nor judgment against Cadmus, it is not competent for him to assign errors to the judgment against the others, and which is the only judgment upon the record.

We incline to think that Cadmus is entitled to his writ of error. The 9th section of the Act of 22d May 1722, Purd. 409, gives the writ not merely to parties, but to " any person or persons who shall find him or themselves aggrieved with the judgment," &c. In Steele v. Bridenbach, 7 W. & S. 150, it was denied to a creditor in a proceeding to distribute a debtor's goods, simply because he had not excepted to the auditor's report nor taken any part in the proceedings in court; and though the very point was not presented in the case of Fraley v. Steinmetz, 10 Harris 437, and Mevey's Appeal, 4 Barr 80, it is impossible to observe what the court says about the rights of defence which a terre-tenant possesses and to doubt that he may have a writ of error when it is necessary to extricate his title from jeopardy, or, perhaps, even to clear it of a cloud.

And such, in effect, is the rule at common law.   In 2 Saunders R. 46, note 6, it is laid down that no person can bring a writ of error unless he is a party or privy to the record, *or is prejudiced by the judgment;* the rule upon the subject being that a writ of error can only be brought by him who would have had the thing if the erroneous judgment had not been given.   Thus, in an action for land against a tenant, the heir must bring error in case of the tenant's death.   And it may be brought by a tenant to reverse his own judgment if erroneous or given for a less sum than he has a right to demand: Johnson v. Jebb, 3 Burr. 1772. So, if an action be brought against A. as a feme sole who is in truth a feme covert, the husband may join her in a writ of error after judgment, from respect to the interest he has in her person and services: Jaques v. Cerar, 2 Saunders 101 f, in note.

These are instances, and many more might be adduced, where parties and persons against whom no judgment has been rendered may have the writ to reverse a judgment that shall prejudice their legal rights if left unquestioned.

Is not Cadmus in a position to be aggrieved by the judgment

[Cadmus v. Jackson.]

that was rendered in favour of the mortgagee? At the impetration of the writ of *scire facias* he was in point of fact a terre-tenant. The writ was directed to terre-tenants. And though Cadmus was not served, his subsequent appearance, by leave of the court, made him to all legal intents a party to the record. The *sci. fa.* was upon a mortgage, and a mortgage is a specific lien upon the premises described in it, and when the mortgagee has got a judgment against his mortgagor and terre-tenants he has a right to sell the premises to the highest and best bidder. Now Cadmus claimed to own the premises relieved of the mortgage, and though he might, perhaps, battle successfully with a future vendee of the sheriff, can it be said that a judgment which commits him to such a battle does not aggrieve him? His title would have prevailed and he would have had the thing if the judgment, which he complains of as erroneous, had not been given. As between him and Jackson there could be no further litigation if Cadmus's fundamental proposition that the Orphans' Court sale divested the lien of the mortgage had been sustained, for if it divested it for part of the debt it divested it altogether: Mevey's Appeal, 4 Barr 80. But his proposition was not sustained, for a judgment was rendered on that very mortgage, and whether it was against him or another, it subjects the premises to liability of sale, endangers his title, impairs its marketableness and exposes him to the costs of litigation, and, therefore, we think him so aggrieved by the judgment as to be entitled to his writ of error. The motion to quash it is accordingly dismissed.

The writ of error well sued by Cadmus, what benefit shall he take from it? Shall the only judgment we find upon the record be reversed at his instance?

Regarded as a judgment against the land, and a judgment in *scire facias sur mortgage* is a judgment *in rem* (Wickersham *v.* Fetrow, 5 Barr 260), it is obviously erroneous if the lien of the mortgage was divested by the Orphans' Court sale.

Whatever doubts may formerly have existed on the subject, none exist now in Pennsylvania that an Orphans' Court sale of a decedent's real estate is a judicial sale, and divests the lien of mortgages as well as of all other debts that are capable of ascertainment in moneys numbered. "Such real estate," says the 20th section of the Act of 24th February 1834, Purd. 289, "so sold, shall not be liable in the hands of the purchaser for the debts of the decedent." These are simple but very effective words. They encourage bidders to pay outside prices, and they sweep off all liens which debts of the decedent may have occasioned, except only certain fixed liens like a widow's dower, which are incapable of pecuniary admeasurement. And a mortgage given by a former owner of the estate is a debt of the decedent who dies seised of

[Cadmus *v.* Jackson.]

the estate as truly as if he had made the mortgage himself: Moore *v.* Shultz, 1 Harris 101. Nor is it within the protection of the Act of 6th April 1830, Purd. 325, for the sale is not made upon the process which is contemplated by that act.

The ordinary legal effect of such a sale, therefore, is to divest the lien of the mortgage.

In strong contrast with this sale was such a sale as that which the sheriff made to Keenan. It was a sale upon a judgment for taxes which were assessed long after the mortgage was recorded, and no sale for taxes so assessed divests the lien of a mortgage. To this effect the two Acts of Assembly of 11th April 1835 and 16th April 1845, Purd. 325, are express. See also Perry *v.* Brinton, 1 Harris 202. And not only did not that sale divest the lien of the mortgage, but it left in Young's heirs an interest which sprung from the right of redemption for two years. This indeed is all the interest which the counsel for the defendant in error will agree remained to Young's estate upon which the Orphans' Court could act; and it being all which that court could order to a sale, it was all that Cadmus could purchase; and as he did not redeem within two years, it is argued that he took nothing by his purchase, or rather that he forfeited by laches the imperfect right which he did take.

To this view it is answered in the first place, that the taxes were paid before the lien was entered for them, and that all judicial process founded upon paid taxes was null. This answer cannot prevail, because there is the judgment for the taxes in full force, and it cannot be collaterally impeached.

In Delaney *v.* Gault, 6 Casey 63, it was held that in a subsequent ejectment an owner who had not been served with the *scire facias* might show that the taxes were paid before the *scire facias* issued, but here Young must be regarded as a party served, and if so, his defence should have been made to the *scire facias*. For this reason we think there was no error in rejecting the evidence of the payment of the taxes. Paid or not, there was a legal judgment for them founded on what the law makes the equivalent of personal service of process, and whilst it remains unimpeached, it concludes Young and all claiming under him.

In the next place, the above position of the counsel for defendant in error is attempted to be answered by pointing to the fact that Jackson, the mortgagee, came before the auditor and took from the proceeds of the Orphans' Court sale more than $2000 of his mortgage-money, and therefore it is argued Cadmus's title must be held to relate back to the date of the mortgage. The argument is, that he took the title as clear and unencumbered as when it was first mortgaged to Harper. We cannot deduce this conclusion from the authorities to which we have been referred.

[Cadmus v. Jackson.]

If the sale had been on the mortgage, or upon a bond accompanying it, the lien would have been divested and the mortgage satisfied, however far short of the principal debt the purchase-money had fallen; but even then there would have been no substitution of the purchaser to the title of the mortgagee, because a mortgagee, as such, has no title to which a purchaser can be substituted. He is a mere encumbrancer. If he have the title still in him, as a vendor may have, undoubtedly he would be decreed to convey upon receipt of the purchase-money, but here was a mere security for money, and the fund that was distributed was not raised by proceedings upon that specific security, but by a proceeding for the payment of debts in general. As far as the mortgagee received proceeds of the sale his debt is satisfied. As to the unpaid balance the question is, whether his mortgage lost its lien? I know of no principle of law that would justify us in carrying the purchaser's title by relation back to the date of the mortgage-debt, any more than to the date of any of the other debts of the decedent, which moved the court to order the sale.

What other answer does the defendant's position admit of? If it cannot be answered—if it must be admitted that the Orphans' Court sold and Cadmus bought only the right of redemption, then it will follow that that estate or interest expired with the limitation of two years, and Cadmus has no position in court. But the major proposition assumes that the sheriff's sale to Keenan was valid. If this were not so—if that sale was incompetent to divest the interest of Young's heirs, then the jurisdiction of the Orphans' Court attached to a substantial interest the whole estate, and passed it to Cadmus cleared of all liens. When Young died on the 27th of January 1860, though he stood in the place of the mortgagor, he had more than an equity of redemption, he had the full and absolute estate in fee simple, encumbered indeed by the mortgage, by the city's judgment for taxes, and by whatever other debts he owed, but subject to those encumbrances his seisin was complete.

That such is the estate of a mortgagor in possession is shown by the cases, a sufficient sample of which are Wentz v. Dehaven, 1 S. & R. 317; Schuylkill Navigation Co. v. Thoburn, 7 Id. 419; Bowen v. Oyster, 3 Penna. Rep. 244. As such the estate descended to Young's heirs the instant he died, and thereupon the jurisdiction of the Orphans' Court attached, for purposes of administration, in the interest of creditors as well as of the widow and heirs: Horner & Roberts v. Hasbrouck, 5 Wright 180.

The manifest policy of our law is, wholly to commit to the Orphans' Court the conversion of decedent's real estate as well as his personalty into money, for the payment of debts. In pursuance of this policy, the 35th section of the Act of 24th Febru-

2 P. F. Smith—20

ary 1834 would have restrained proceedings in the Common Pleas for the conversion of Young's estate, and left the duty to the Orphans' Court, had application been made; but either from ignorance that such proceedings were going on, or from other cause, the administrators failed to apply. The administrators had been appointed on the 17th February 1860—the very day the *levari facias* issued upon the city's judgment; but they were not warned, and there is nothing upon the record to indicate notice to them that their decedent's estate was about to be sold at sheriff's sale.

The city's judgment having been obtained in the lifetime of the decedent, though at a time when probably he was on his death-bed, it was not subject to the 34th section of the Act of 1834, which requires widows and heirs to be warned before real estate is seized in execution for a decedent's debts. Yet why was it not subject to the 35th section of that act? This section in very express terms forbids an execution to issue upon a judgment obtained in the lifetime of the decedent, until the personal representatives (who are the administrators) have been warned by *scire facias*, notwithstanding the *teste* of such execution may bear date antecedently to his death. This section changed the *old* rule which carried back the effect of the execution to its teste, which was usually the first day of the term to which it issued; but it did not alter the practice of fully executing writs of execution, where the death occurs pending the writ. The death of Young, however, did not occur pending the *levari facias*, but before it issued, and it is immaterial whether before or after the day on which it bore teste.

Now there is the rule of the statute for such a case as this. " No execution shall issue," says the legislature, " until the personal representatives have been warned by *sci. fa.*" Had this rule been observed, the administrators would not have been ignorant of the proceedings in the Common Pleas, and would no doubt have restrained it under the 35th section; but by not observing it, the very mischief intended to be averted, happened in the sacrifice of the decedent's homestead for $20.

It is not a case of irregular process, but it is a defect of power to take any process of execution before *sci. fa.*, and nothing can be more imperative than the denial of this power. Then it is the case of void process, for surely that which is expressly forbidden by law must be void process.

Sheriff's vendees buy at their peril. Not only must there be a legal judgment, but a legal execution also, to make a sheriff's sale valid. But it was urged in argument with great pertinacity, that Keenan's title is not in question here, and our right to pass upon it was very earnestly denied. If his title be not in question,

[Cadmus v. Jackson.]

why is he upon the record as a terre-tenant? Jackson seeks the fruits of a judgment against Keenan upon the mortgage which he holds on the premises, and unless Keenan is indeed a terre-tenant, that is a claimant to *title* in the premises, he has no right to be upon the record, and Jackson has no right to a judgment against him. It is idle, therefore, to argue that Keenan's title is not in question. He stands as a purchaser at sheriff's sale under void process, and the liability of the premises in his hands for the balance due upon Jackson's mortgage is the vital question of the cause. The premises are not liable if the lien of the mortgage was divested by the Orphans' Court sale. The lien was divested by the Orphans' Court sale upon all the interest sold. The interest sold was the fee simple and not a mere redemption right, unless the sheriff's sale to Keenan was valid. But it was not valid because not made upon legal process. The conclusion is inevitable, therefore, that Jackson is entitled to take no benefit from the present *scire facias*.

If, on the other hand, Keenan's title can be held above impeachment, the mortgagee, Jackson, would nullify the Orphans' Court sale after taking the bulk of its proceeds, would leave Cadmus nothing for the money he paid, and would enable Keenan to perfect his title by paying the balance of the mortgage. Consequences which would flow from a wanton infraction of both the letter and policy of a beneficent statute.

We cannot consent to the setting aside the statute for the benefit of such consequences. When a creditor who has got a judgment for a debt once paid, cannot afford to wait the year which the law gives for settling a dead man's estate, but is in such hot haste that he must issue his execution within a month after the death, let him see to it that he proceed according to law; that he do not force a sale upon process which the law forbids. And a mortgagee who looks to an Orphans' Court sale to reimburse his mortgage-debt, should not forget that it is the quality of such a sale to divest the lien of his mortgage, and therefore, if he bid not the property to a sum sufficient to cover his mortgage, his remedies upon that instrument are gone, and his only recourse must be to his bond, if there be one accompanying the mortgage.

The judgment is reversed.