## Mint Realty Company *v.* Philadelphia, Appellant.

*Taxation—Municipal taxation—Real estate—Title in the United States government—Sale—Articles of agreement—Equitable title.*

Where the United States government has sold real estate under articles of agreement reserving the legal title to itself until all payments are made and conditions performed, such real estate is not taxable by municipal authorities until the vendee has made all the payments and performed all the conditions of the articles of agreement.

MESTREZAT and POTTER, JJ., dissent.

Argued Jan. 21, 1907. Reargued April 2, 1907. Appeal, No. 277, Jan. T., 1906, by defendants, from decree of C. P. No. 5, Phila. Co., March T., 1904, No. 4,000, on bill in equity in case of The Mint Realty Company v. The City of Philadelphia and Charles L. Riddell, Deputy Tax Collector. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

MARTIN, P. J., found the facts to be as follows:

The United States of America, being the owner of the property known as the "Mint Site," at the northwest corner of Chestnut and Juniper streets, in the city of Philadelphia, the secretary of the treasury, on March 22, 1902, executed and delivered to Felix Isman an option, agreeing to accept him as the purchaser for the property at the price of $2,000,000, to be paid within sixty days, of which sum $25,000 was paid in cash upon the execution of the option, $25,000 more was to be paid within thirty days afterward, and the balance of $1,950,000 within six months. Isman assigned his option to the Mint Realty Company, the complainants in this case. On May 28, 1902, a contract for the sale of the property to the Mint Realty Company was executed by the secretary of the treasury, in which the United States agreed to deliver to the Mint Realty Company, upon payment in full of the purchase money, a deed for the property. It was stipulated in this agreement that the balance of the consideration money, $25,000 should be paid within thirty days, and $1,950,000 on or before September 22, 1902. Possession of the premises was to be given at the time of final payment. There was a provision of forfeiture of the contract in the event of default in payment of the consideration money, and the United States reserved the right to resell the property and to hold the Mint Realty Company responsible in the event of loss.

The Mint Realty Company having paid an additional sum of $25,000 on account of the purchase money, on August 21, 1902, a further sum of $200,000 was paid to the United States and it was agreed that the period for the payment of the balance of $1,750,000 should be extended for eighteen months from the time stipulated in the former agreement, with the right on the part of the company to pay the entire balance at any time. This contract provided that:

"The United States Government, acting as aforesaid hereby agrees and does deliver possession to the Mint Realty Company of the Old United States Mint Property in Philadelphia, situate at the northwest corner of Juniper and Chestnut streets, with the express understanding that the said company may make such alterations, additions and improvements or construct

such new building or buildings as it may deem fit, with the further express understanding, however, that in the event of the default for a further period than thirty (30) days after the 22d day of March, One thousand nine hundred and four (1904) the said United States Government shall have the right to enter the premises, eject and expel said Mint Realty Company and all others claiming under it, therefrom, and this agreement shall cease and absolutely determine and the said Mint Realty Company shall forfeit, which it hereby agrees to do, all sums of money heretofore paid by it on account of the said Old United States Mint Property at Philadelphia as aforesaid, as well as such building which the said Mint Realty Company may have constructed, altered or improved, and in the event of such default, the United States Government is hereby empowered to enter in any competent court an amicable action in ejectment against the said Mint Realty Company and all persons claiming under it, for recovery of possession of the Old United States Mint Property, situate at Philadelphia and for which this agreement shall be a sufficient warrant."

In July or August of 1903, complainants entered into actual possession of the property, removed the old structure and proceeded to erect the building now on the premises.

On December 14, 1903, $50,000 having already been paid on account of the purchase money, the sum of $250,000 additional was paid by the complainants to the United States, and a contract was made extending the time for the payment of the balance of the consideration money, viz.: $1,700,000, and providing that of this sum $100,000 should be paid March 22, 1904, $100,000 December 22, 1904, and $1,500,000 on February 21, 1905; and extending to complainants the privilege of paying the amount in full at any time.

Upon completion of the building it was rented by complainants to various tenants.

Assuming the complainants to be the owner of the property by virtue of the contract of sale, the city of Philadelphia caused an assessment for taxes to be made from the date of November 1, of the year 1902, and for the entire year of 1903. These taxes remaining unpaid, a levy was made on the tenants, pursuant to the terms of the Act of April 19, 1883, P. L. 9.

Application was made on behalf of complainants for an in-

junction to restrain the collection of the taxes on the ground that the title to the property is vested in the United States of America, and so remains until the final payment of the entire consideration money.

The contract of sale between the United States and the Mint Realty Company not having been presented at the registry bureau of the city of Philadelphia, the tax was assessed in the name of the United States of America, the last registered owner, but was levied on the tenants of complainants. It was argued on behalf of the city that upon the execution of the agreement of sale, which vested in the vendee the right to possession under the terms of the contract of August 21, 1902, the Mint Realty Company became the owner of the property, and the United States retained only a vendor's lien for the unpaid purchase money, to enforce which, provision was made in the agreements for forfeiture of complainants' title and the entry of an amicable judgment in ejectment, and that as the real owner complainants are liable for taxes, although assessed in the name of another; that if complainants' title is hereafter forfeited to the government, the rents accrued belong to complainants, and the rights of the government are not affected by the pending levy upon the tenants of complainants.

The tax is assessed upon the land itself.

The entry upon the assessor's book for 1902 is as follows:

" Chestnut street, north side, west of Thirteenth street, northwest corner of Juniper street, United States of North America, 2 sty. marble Mint building, with mansard roof. Lot 152x204. Exempt $1,250,000.

"Taxable as of November 1, 1902. Valuation $208,333, added by certificate 11/8/02;" and for 1903:

"Chestnut street, north ·side, west of Thirteenth street. N. W. cor. Juniper street, United States of North America, lot 152x204, valuation $1,250,000."

It appears by the testimony that the property was considered by those interested in it to be of much greater value than the figure at which it was assessed, but no evidence was presented which indicated that the assessment was made upon any less interest than the entire property.

The court entered a decree in accordance with the prayer of the bill.

*Error assigned* was the decree of the court.

*J. Howard Gendall*, with him *Mayne R. Longstreth, James Alcorn* and *John L. Kinsey*, for appellants.—The city may tax different estates in land to the different parties thereto, and sell only the interest of the party making default. It may also tax a taxable interest in real estate and exempt one not taxable in the same property. This is true even though the exempt interest in the real estate may be owned by the United States: Baltimore Shipbuilding & Dry Dock Co. v. Baltimore, 195 U. S. 375 (25 Sup. Ct. Repr. 50).

The interest of the Mint Realty Company is taxable as a vendee in possession: 1 Cooley on Taxation, 3d ed., 135; Hodgdon v. Burleigh, 4 Fed. Repr. 111; Oswalt v. Hallowell, 15 Kan. 154; State v. Tucker, 38 Neb. 56 (56 N. W. Repr. 718); Crocker v. Donovan, 1 Okl. 165 (30 Pac. Repr. 374); Territory v. Clark, 2 Okl. 82 (35 Pac. Repr. 882).

A vendee, in possession under executory articles of sale, is the owner of the equitable title, and is obliged to pay taxes accruing after his purchase: Bradford v. Union Bank, 54 U. S. 57; Glancy v. Elliott, 14 Ill. 456; Cole v. Wright, 70 Ind. 179; Miller v. Corey, 15 Iowa, 166; Pringle v. Wagnoer, 110 Mich. 612 (68 N. W. Repr. 423); Farber v. Purdy, 69 Mo. 601; Williamson v. Neeves, 94 Wis. 656 (69 N. W. Repr. 806).

The five-story office building was the property of the Mint Realty Company and taxable as such: People v. Black Diamond Coal Mining Co., 37 Cal. 54; People v. Shearer, 30 Cal. 645; State v. Moore, 12 Cal. 56; Forbes v. Gracey, 94 U. S. 762.

The city of Philadelphia has power to tax an interest in real estate: Young Men's Christian Assn. v. Donohugh, 7 W. N. C. 208; Philadelphia v. Barber, 160 Pa. 123; Mercantile Library Co. v. Philadelphia, 161 Pa. 155; American Sunday School Union v. Philadelphia, 161 Pa. 307; Moore v. Taylor, 147 Pa. 481.

The appellee has no standing for equitable relief: Philadelphia v. Penna. Institution, 28 Pa. Superior Ct. 421; Philadelphia v. Penna. Co., 214 Pa. 138.

Exemption is a personal privilege and does not pass to a purchaser of the property: Picard v. R. R. Co., 130 U. S. 637

(9 Sup. Ct. Repr. 640); Louisville, etc., R. R. Co. v. Palmes, 109 U. S. 244 (3 Sup. Ct. Repr. 193); New Haven v. Sheffield, 30 Conn. 160; Revoir v. State, 137 Ind. 332 (36 N. E. Repr. 1109); Laird v. Wilson, 2 N. J. L. 281; Armstrong v. Treasurer of Athens County, 10 Ohio, 235; Sandford v. Decamp, 8 Watts, 542.

*John G. Johnson,* for appellee.—There is no power in the city of Philadelphia to tax an interest in real estate. The property is only taxable as a whole.

The tax was assessed for the last two months of the year 1902, and for the whole of the year 1903, against the Mint site as a whole, and the effort to make it appear that the taxation was only upon an alleged equitable interest therein held by the Mint Realty Company was made in June, 1904, after the bill had been filed and an injunction had been asked for.

Whilst the alteration in the assessment books was under the pretext that the equitable interest only was taxed, the valuation was really that which had been put upon the property as a whole.

The property attempted to be taxed belonged to the United States and was not subject to taxation: Railway Co. v. McShane, 89 U. S. 444; Hefner v. Northwestern Mut. Life Ins. Co., 123 U. S. 747 (8 Sup. Ct. Repr. 337); Railway Co. v. Prescott, 83 U. S. 603; Wisconsin Cent. R. R. Co. v. Price County, 133 U. S. 496 (10 Sup. Ct. Repr. 341); Central Pacific R. R. Co. v. Nevada, 162 U. S. 512 (16 Sup. Ct. Repr. 885); Northern Pacific R. R. Co. v. Meyers, 172 U. S. 589 (19 Sup. Ct. Repr. 276); Northern Pacific R. R. Co. v. Traill County, 115 U. S. 600 (6 Sup. Ct. Repr. 201); United States v. City of Milwaukee, 100 Fed. Repr. 828.

OPINION BY MR. JUSTICE ELKIN, May 6, 1907:

This is a proceeding in equity to restrain the city of Philadelphia from the collection of taxes levied against the appellee company for the years 1902 and 1903. The appellee is a private corporation and has entered into an article of agreement for the purchase of the old Mint site from the United States government. The legal title to the property is in the United States, and will remain there until the final payments are

made and all the precedent conditions are performed. The general rule is that real estate, the title to which is in the United States, is not subject to taxation for state and local purposes. It is familiar law that in dealing with the taxation of real estate belonging to the United States, the decisions of the federal courts are final and conclusive in all jurisdictions. Starting, then, with the conceded fact that the title to the property attempted to be taxed in this case is in the United States, and therefore ordinarily not subject to municipal taxation, the appellants must show that they come within some exception to the general rule in order to give them any standing to assert a claim for taxes against the appellee company. The attempt is made to take this case out of the general rule by showing that the United States, by article of agreement, had sold and agreed to convey the property to the appellee, and this company being in possession, receiving rents and exercising all rights of ownership, has such an equitable title as to subject the property to taxation in its name. This contention would be perfectly sound if the rule of taxation applicable thereto could be determined by Pennsylvania law. The difficulty, however, is that in the present case our state law has no application, and it becomes necessary to look to the decisions of the federal courts in order to determine the rights of the parties.

The rule which denies the right of a state or municipality to tax the property of the United States is founded on the principle which inheres in every independent government, that it must be free from any such interference of another government as may tend to destroy its powers or impair their efficiency: Wisconsin Central Railroad Company v. Price County, 133 U. S. 496. The power to tax implies the power to divest the title by a tax sale when there is default in the payment of the taxes levied. Hence the federal government has most carefully guarded its property from the vigilance of the local tax gatherer. There is, however, an exception to the general rule recognized by the federal courts, and that is, where congress has prescribed the conditions upon which portions of the public domain may be alienated, and provided that upon the performance of the conditions, a patent of the United States shall issue to the purchaser, and all such conditions have

been complied with, the land alienated being distinctly defined, it only remaining for the government to issue its patent, and until such issue holding the legal title in trust for the vendee, who has gone into possession and is exercising the rights of ownership therein, the purchaser will be treated as the beneficial owner of the land, and the same may be subjected to taxation for local purposes. The appellants rely upon this exception to the general rule to support their contention in the present case. It must not be overlooked, however, that this exception is only recognized where congress has prescribed the conditions upon which portions of the public domain may be alienated, and directed that upon the performance of these conditions a patent shall issue. In these exceptional cases, the federal courts have distinctly held that all of the precedent conditions must have been complied with so that nothing remains on the part of the purchaser to be done before he is entitled to the legal title in order to subject the property to local taxation : Railway Company v. Prescott, 83 U. S. 603 ; Central Pacific Railroad Co. v. Nevada, 162 U. S. 512 ; Northern Pacific Railroad Co. v. Myers, 172 U. S. 589. In other words, even in these exceptional cases, it has been uniformly held, that if any part of the purchase money remains unpaid, or anything remains to be done by the purchaser, or any precedent condition has not been performed, the right to subject the property to local taxation does not exist.

Let us see, then, whether the case at bar comes within the exception to the general rule as defined by the federal courts. The purchaser, the vendee company here, has agreed to pay the United States for the property the sum of $2,000,000, on which it had only paid at the time of the filing of this bill $250,000, leaving a balance unpaid of $1,750,000, so that all of the money has not yet been paid. Then, again, under the terms of the agreement the government expressly reserved the right to declare a forfeiture of the contract as well as of all moneys paid on account thereof, if all of the conditions contained were not performed by the purchaser, so that if the balance of the purchase money is not paid, or if any of the conditions are not performed, the purchaser will forfeit his equitable interest in the property. Clearly, therefore, the facts of this case do not bring it within the exception to the general rule.

The appellants, however, rely upon one of the latest decisions of the supreme court of the United States to support their contention that the rule of the earlier cases hereinbefore cited has been modified or changed. In Baltimore Shipbuilding, etc., Company v. Baltimore, 195 U. S. 375, it was held that the real estate of the shipbuilding company was subject to taxation by the city of Baltimore. After a careful consideration of that case we have failed to discover that the rule of the earlier cases has been changed, either in express terms or by necessary implication. In that case, however, it must not be overlooked that the title to the property was not in the United States, but in the shipbuilding company. There was a duty on the part of the company to allow government vessels to put into dry dock for repairs, and there was a condition subsequent of defeasance, and these were the distinguishing features of that case clearly pointed out by the court in rendering the decision. The legal title was in the shipbuilding company, and therefore under the law of the state it would be subject to local taxation just like the property of any other private corporation or individual unless entitled to exemption for some sufficient reason. It undertook to evade the payment of local taxes on the ground that the United States had an equitable interest in the title to the property, and therefore claimed that the case came within the general rule of taxation of property belonging to the federal government. The court very properly held that under such circumstances the shipbuilding company could not be permitted to avoid its share of the burdens of local taxation because it had entered into an agreement with the United States providing that if the conditions thereof were not kept and performed a defeasance would result. Another ground upon which the right to impose the tax in that case was predicated was that under the laws of the state of Maryland even an equitable interest in the title to real estate may be taxed, and in default of payment thereof a tax sale would only divest the equitable interest against which the tax was assessed. The answer to this position is that in Pennsylvania this is not now, and never was, the law. In this state the rem is taxed, and if a tax sale results from default in the payment of the taxes levied, the title to the rem is sold. It is true that in our state a vendee of

land purchased by article of agreement may be assessed for the full taxable value of the land, although he has only paid a portion of the purchase price. Indeed, this very frequently happens, but the right to do so is founded on the principle that the tax is against the rem, and it is a matter of no importance whether the tax is assessed in the name of the legal or equitable owner, so long as it is assessed against the whole title to the land. Some confusion about this matter may have arisen because our courts have always recognized the right to impose a tax upon the holder of the legal title to different strata within the boundaries of a particular tract of land. As, for instance, it frequently happens that the legal title to the surface is in one owner, the title to the coal in another, and the title to the ores in still another. In such a case, the surface is taxed to its owner, the coal to its owner, and the ores to their owners, but this is because there has been a severance of the legal title to the different strata, and each stratum is subject to taxation in the name of its owner just as much as if it represented a distinct and separate acreage. In the taxation of the coal, for instance, in such a case, the legal title might be in one owner and the equitable title in another, but the tax would be levied and assessed against the rem, that is, all the coal, and if a tax sale resulted from default in the payment of these taxes, the whole title to the coal would pass.

Another answer to the contention made by the appellants in this respect is that the learned court below has found as a fact that there was no assessment or attempt to assess the property otherwise than as a whole in the name of the United States until after the filing of the present bill. Of course, the rights of the parties to this controversy must be determined upon the facts as they stood at the time the bill was filed. On this ground, as well as for the other reasons set out in this opinion, we are compelled to hold that the property was not subject to taxation for municipal purposes, and that the decree entered by the court below must be sustained.

Decree affirmed.

MESTREZAT and POTTER, JJ., dissent.