## City of Philadelphia v. Myers.

*Mayne R. Longstreth,* Assistant City Solicitor, and *Augustus Trask Ashton,* City Solicitor, for plaintiff.

*Alexander Meigs Haig* and *Michael Francis Doyle,* for defendant.

GORDON, JR., J., June 17, 1930.—This is a rule to show cause why a lien for taxes should not be stricken from the record and a sheriff's sale thereunder stayed. The case is before us upon petition and answer, in which the following material and controlling facts appear: By the Acts of Congress of May 16, 1918, ch. 74, 40 Stat. at L. 550, and of June 4, 1918, ch. 92, 40 Stat. at L. 594, the Federal Government purchased land in the City of Philadelphia, Pennsylvania, for certain war purposes and created the United States Housing Corporation of Pennsylvania, in which, for governmental administrative purposes, title to the land purchased was vested. This land was divided into building lots, on which houses were erected to be used by persons engaged in war activities. After the conclusion of the war, Congress, by the Acts of July 11, 1919, ch. 6, 41 Stat. at L. 35, and of July 19, 1919, ch. 24, 41 Stat. at L. 163, authorized and directed the Housing Corporation to sell the properties, and by the last mentioned act authorized sales to be made upon credit, provided "that no sale or conveyance shall be made hereunder on credit without reserving a first lien on such property for the unpaid purchase money." On Nov. 1, 1920, the Housing Corporation sold the premises here involved, No. 2739 South Tenth Street, to the defendant, under a contract of sale in which payment was required to be made by the purchaser in monthly instalments covering a period of approximately fifteen years. The contract also provided that "When said bonds and $20 [being 10 per cent. of the purchase price] of said principal has been thus paid, the seller agrees to execute and deliver to the said purchaser a good and sufficient special warranty deed for said property free from all encumbrances except as herein mentioned, and

the purchaser agrees to execute and deliver to said seller a note or notes with a good and sufficient mortgage or trust deed for such property to secure payment of the balance of the purchase price in accordance with the terms of this contract." By this method the Housing Corporation carried out the requirements of the proviso quoted above and reserved, after the delivery of the deed to the purchaser, a first lien on the property for the protection of the Federal Government. The purchaser has been in possession of the property since Nov. 1, 1920, the date of the contract, and, although 10 per cent. of the purchase money was actually paid at or about the time the contract was signed, the latter provision has not been performed, and the Housing Corporation and the purchaser have never formally completed the transaction by exchanging the deed and mortgage.

The city having assessed the property in question for taxation each year after the date of the contract, filed its lien for the tax due in 1926, to which this proceeding relates, and recited in the lien that "All estate, title and interest of the United States Housing Corporation and of the United States of America, if any, is excepted from this lien." Later, a *scire facias* was issued on the lien, which was personally served upon the defendant as real owner, although he has failed to register his title. No defense was made to the *scire facias* by the defendant, and judgment was duly entered thereon. A writ of *levari facias* was then issued and the sheriff's sale advertised. The advertisement recited the lien and gave notice that the property was to be sold subject to the interest therein of the United States. The defendant then obtained the rule now before us to show cause why the lien should not be stricken off and the sale stayed.

The defendant contends that his property is not taxable, invoking the general doctrine that property of the Federal Government is not taxable by a state or its municipal agencies, since the legal title to it is still in the Housing Corporation, notwithstanding under the contract of sale he has a right to demand and to receive a conveyance of the title upon delivery of a purchase-money mortgage for the balance due and under the admissions of the pleadings the Housing Corporation is ready and willing to make the conveyance. The argument advanced by the defendant in support of this contention is that, since the legal title is not in him, he has only an equitable title, which is not subject to taxation. It may be conceded that an equitable interest, as such, is not taxable. Where, however, a real ownership is concealed under the guise of an equitable interest, equity, which the courts administer under common law forms, will look through the form of the transaction to see and reach the substance of the situation. This being so, it is evident that the defendant is seeking to evade taxation of his property by neglecting or refusing, for a very transparent reason, to accept the formal transfer of the property to which he has for many years been entitled. It would work a wrong and injustice to the state and to other taxpaying citizens to permit an owner whose property is rightly taxable to resort to such a subterfuge to escape liability for his just taxes. The equities of the case are, therefore, all in favor of the city, and it remains to be considered only whether, notwithstanding those equities, there is any insuperable obstacle in law or precedent to sustaining the tax.

The principal case upon which the defendant relies in support of his contention that his property is not taxable is Mint Realty Co. *v.* Philadelphia, 218 Pa. 104, in which, under superficially similar but fundamentally distinguishable facts, the site of the old mint of Philadelphia was held not to be taxable so long as title remained in the Federal Government, which had sold

it to the plaintiff in that case. There, as here, the plaintiff purchased the land from the Government under a contract calling for instalment payments, and in that respect the case is similar to the one before us. The distinguishable feature of the case lies, however, in the fact that there the contract of sale provided that title should not be given until the last payment was made, while in the present case the Government agreed, and has long stood ready, to convey the legal title to the plaintiff. The case relied on does not, therefore, control the question on the facts before us.

The objection that the tax under consideration is invalid because it is a taxing of property of the Federal Government is one which this defendant sets up only derivatively because of the cloud which would rest upon his title if a sale were had under an illegal tax. The primary person to raise such an objection is the Federal Government, through the Housing Corporation, whose interest alone is exempt from taxation, and it evidently considers its interests safe, for it is not appearing to contest the validity of the tax. But even if it did object to the tax upon the ground advanced by the defendant, the objection would be without merit, as this very question was passed upon by the Supreme Court of the United States in the case of City of New Brunswick et al. v. United States of America and United States Housing Corp., reported in 276 U. S. 547. In that case the United States Housing Corporation sold a lot of land owned by it in the City of New Brunswick, New Jersey, under the same circumstances and by the same congressional authority that the Housing Corporation sold to the defendant in the present case. The contract of sale contained the identical provisions for the delivery of title and the taking back of a purchase-money mortgage, upon the payment of 10 per cent. of the purchase price, that were contained in this defendant's contract, and the City of New Brunswick attempted to levy a tax upon the property so sold after the 10 per cent. had been paid and before the deed and mortgage had been exchanged. The same question arose, therefore, in that case as is presented here. The United States Circuit Court of Appeals entered a decree enjoining the City of New Brunswick from collecting the tax assessed, and the Supreme Court of the United States reversed that decision, holding that, so long as the interests of the Federal Government were expressly excluded from the tax sale and the sale was, by express terms, made subject to all such prior interests, there was nothing in the Federal law to prevent levying the tax. The reasoning by which the Supreme Court reached this conclusion is illuminating upon the question before us and emphasizes the distinction we have drawn between the sale in the Mint Realty Company case, *supra*, and sales by the Housing Corporation under a contract similar to the one used in this case. In rendering the court's opinion, Mr. Justice Sanford said:

"It is unquestioned that so long as the corporation held title to the lots as an instrumentality of the United States and solely for its use and benefit, they were not subject to taxation by the city: Clallam County v. United States, 263 U. S. 341, 344. But after the purchasers had made the payments entitling them to receive deeds to the lots, the corporation ceased to hold title solely for the United States and held partly for the purchasers, who had become the equitable owners of the property and entitled to conveyance of the title subject to their obligation to execute mortgages securing the payment of the balance of the purchase price. In equity the situation was then the same as if the corporation had conveyed title to the purchasers, as owners, and they had mortgaged the lots to the corporation to secure the unpaid purchase money. As between the corporation and the city, the taxability of the lots is to be determined as if both the deeds and the mortgages had been executed; that

is, as if the corporation, while conveying the legal title to the purchasers, had retained a mortgage lien to secure the balance of the purchase price.

"By the specific provision of the Act of 1919, the corporation was not authorized to convey the property 'without reserving a first lien . . . for the unpaid purchase money;' and the contracts of sale could not waive, and did not purport to waive, this lien or subordinate it to taxes.

"Under the provisions of the New Jersey law, the taxes assessed to the purchasers, as equitable owners, rest upon the entire lots, including not only the interests of the purchasers as equitable owners but the interest of the corporation retained and held as security for the payment of the unpaid purchase moneys; no distinction being made under that law between the interest of the owners and that of mortgagees or lienors. We see no reason, however, if the New Jersey law permits, why the city may not assess taxes against the purchasers upon the entire value of the lots and enforce collection thereof by sale of their interests in the property. With that the corporation and the United States have no concern. But it is plain, under the doctrine of the Clallam case, that the city is without authority to enforce the collection of the taxes thus assessed against the purchasers by a sale of the interest in the lots which was retained and held by the corporation as security for the payment of the unpaid purchase money, whether as an incident to the retention of the legal title or as a reserved lien or as a contract right to mortgages. That interest, being held by the corporation for the benefit of the United States, is paramount to the taxing power of the state and cannot be subjected by the city to sale for taxes.

"We conclude that, although the city should not be enjoined from collecting the taxes assessed to the purchasers by sales of their interests in the lots, as equitable owners, it should be enjoined from selling the lots for the collection of such taxes unless all rights, liens and interests in the lots, retained and held by the corporation as security for the unpaid purchase moneys, are expressly excluded from such sales, and they are made, by express terms, subject to all such prior rights, liens and interests. This, we think, will meet the equities of the case as between the corporation and the city, and fully protect the paramount right of the United States."

This case thus definitely decides that, provided the state law permits the tax, the retention by the Housing Corporation of title to property formerly belonging to the United States after the time for delivery of title has equitably passed does not prevent taxation by the state of the purchaser's interest therein.

This brings us to a consideration of the only remaining question in the case—Whether the state law permits taxation of property in the present situation. In considering that question, what we have already said respecting the equities of the case should be borne in mind, for since there can be no objection to the tax from the standpoint of the interest of the Federal Government, the right of the defendant to object to it is, of necessity, profoundly affected by his equity. As was said by Mr. Justice Sanford in the case just quoted, in equity the situation is "the same as if the corporation had conveyed title to the purchasers as owners, and they had mortgaged the lots to the corporation to secure the unpaid purchase money." This being so, equity will consider that done which should have been done; it will consider, as regards this defendant, that the title is in him, and will look upon the Housing Corporation as the holder of the prior purchase-money mortgage which it agreed to take for the balance due. Viewed in this light, it is clear that the property is taxable. The interest of the Federal Government in such a mortgage can-

not be affected by the sale, for it is well settled that a prior mortgage is not discharged by a sale for taxes: Cadmus *v.* Jackson, 52 Pa. 295; Act of June 4, 1901, § 32, P. L. 364, 375; reënacted by the Act of May 16, 1923, P. L. 207, 222. The security which the Federal Government retains will not, therefore, be lost to it by a sale for taxes, for the purchaser will take, under the lien and the express terms of the sale, a complete title, subject only to the lien of the Federal Government for the unpaid purchase money.

In conclusion, one other objection to the lien advanced by the defendant may be considered. That is, that the Housing Corporation, which is the registered owner, was neither named in the lien filed nor served with process. This objection is without merit. The act relating to the registration of titles was passed for the benefit of owners, who, before the act, were subject to the serious risk of losing their property by tax sales held without notice to them. Where, however, the real owner omits to register his title, he takes the risk which his own omission creates, and will not be heard to object to a sale of his own property on the ground that, although he himself was served with notice of the proceeding and of the sale thereunder, some one else who was not the real owner had not been served.

We, therefore, conclude that the lien filed against the defendant's property by the City of Philadelphia for the year 1926 is valid, and that the proposed sale thereunder is lawful. Accordingly, the rule to strike off the lien and stay the sheriff's sale is discharged.