Argued October 11; reversed December 24, 1935

# SECURITY SAVINGS & TRUST CO. *v.*
## LANE COUNTY ET AL.
### (53 P. (2d) 33)

*Eugene V. Slattery*, of Eugene, Slattery & Slattery, and W. H. Brooke, District Attorney, and John Bryson, Deputy District Attorney, all of Eugene, on the brief), for appellants.

*E. R. Bryson*, of Eugene (Harris, Smith & Bryson and James K. King, all of Eugene, on the brief), for respondent.

ROSSMAN, J. The issue before us is whether a parcel of real property situated in the city of Eugene, improved with an eight-story and a two-story structure used for office and store purposes, is exempt from taxation. The plaintiff claims that it holds title to this property in trust for the state, and that the state is, therefore, the beneficial owner of the property. It uses this alleged circumstance as the basis for a contention that the property is exempt from taxation. The defendants point to the fact that the legal title is not vested in the state, and contend that if the state has a beneficial interest it does not have the sole beneficial interest. They argue that the property is subject to taxation.

A witness, whose testimony is not contradicted, swore that some years ago $340,000 was invested in this property. In 1933 it was assessed on a valuation of

$124,265 which was based upon 50 per cent market value.

February 21, 1933, when W. E. Miner, now deceased, owned this property he, as donor, and the plaintiff executed an instrument entitled Indenture of Trust, from which we quote:

"* * * the said Donor desiring to dedicate certain property to public usefulness has this day granted, bargained, sold and conveyed and in consideration of the covenants and agreements herein contained, hereby grants, bargains, sells and conveys to said Trustee and its successors forever, and the said Trustee for itself and its successors accepts the following property, * * * To have and to hold the above-described and granted premises unto the said Trustee, its successors and assigns forever, in trust, nevertheless, for the use and benefit of the state of Oregon, for the following purposes: (a) For the maintenance of a chair of instruction of real estate and insurance in the School of Business Administration of the University of Oregon, the occupant of said chair to be known as the 'Miner Professor of Real Estate and Insurance.' "

This paragraph is followed by others which set forth the nature of the educational chair established.

The instrument provides that before anything becomes payable to the state the following items must be paid: (1) expenses incurred in the operation of the properties; (2) the trustee's charges; (3) annuities reserved to W. E. Miner, H. T. Miner (brother of the donor), and Virgie C. Miner (wife of H. T. Miner); (4) monthly installment payments of $312.50 on principal, plus interest, upon a mortgage of $75,000 which encumbered the property; (5) a note for $2,100 payable to Myron Eaton; and (6) a note for $1,200 payable to Henry Slater.

While the deed conveys title to the plaintiff, its authority to administer the property is limited by au-

thority conferred upon four other groups or persons: (1) W. E. Miner and H. T. Miner; (2) the Miner Professor of Real Estate and Insurance; (3) a committee of faculty members of the University of Oregon; and (4) the Board of Higher Education of the state of Oregon. We shall now review the sections of the trust instrument which thus limit the trustee's power. The instrument provides that as long as either W. E. Miner or H. T. Miner live they "shall manage the real property hereinbefore described, and the buildings situated thereon and the business connected therewith". In the event of the destruction of the building by fire during the lifetime of either of the two Miners, the trustee is authorized to expend any fire insurance money received only upon the approval in writing by the Miners. The instrument provides:

"Said real property shall not be sold during the lives of W. E. Miner and H. T., Miner or the survivor without the trustee first obtaining the written approval of such sale from said W. E. Miner and H. T. Miner or the survivor."

These, we believe, are the principal provisions which reserve authority to the Miners.

Next, we shall review the provisions which subject the trustee to the Miner Professor of Real Estate and Insurance. The instrument provides:

"The said Miner Professor of Real Estate and Insurance, or such other person as may be appointed by him with the approval of the Dean of the School of Business Administration * * * shall assist the said W. E. Miner and/or H. T. Miner in the management of said property * * * such services in assisting in the management of said building shall be rendered without compensation."

The instrument provides that the courses taught and the research work done with the funds derived from the

trust "shall be under the direction of the said Miner Professor of Real Estate and Insurance". It further provides:

"The application of said funds to the purpose for which this trust is created shall be determined by the Miner Professor of Real Estate and Insurance, with the approval of the president or corresponding administrative head of the University of Oregon, and the dean or corresponding academic head of the School of Business Administration."

We next come to the powers conferred upon the committee of faculty members: the Miner professor, the president of the university, and a dean. These are given power to approve or disapprove expenditures of the proceeds of the trust fund. The instrument provides that the plaintiff's power to sell the property is subject to the approval of this committee. It further provides that in the event the trustee

"shall be in doubt as to the course to be followed in any particular matter under the provisions of this indenture * * * or in case the application of such provisions is doubtful or in case there is an absence of any provision governing its conduct, then the trustee may refer the question to the said committee for decision and direction, and the decisions and directions of said committee shall fully authorize the trustee to proceed."

These are the principal provisions subjecting the trustee's authority to the supervision of the faculty committee. The instrument also subjects some of the trustee's authority to the Board of Higher Education of this state. We quote from the instrument:

"If in the opinion of the committee hereinafter appointed it shall hereafter appear advisable or desirable to convey and/or transfer the property or a part of the property forming the corpus of this trust to the

state of Oregon, the committee shall refer the matter to the Board of Higher Education of the state of Oregon or its successors, and the trustee, upon the written application of said State Board of Higher Education, signed by a majority or more of the members thereof, shall thereupon convey and/or transfer said property to the state of Oregon for the purposes hereinabove specified and subject to all of the terms, provisions and conditions of this indenture. * * *''

Due, apparently, to the fact that the building will eventually become valueless, the instrument provides that the trustee shall annually deduct from the amount otherwise payable for the state's benefit a depreciation charge which shall become a ''sinking fund''. It directs that this fund ''shall be invested in such income-bearing securities as are authorized by the laws of the state of Oregon at the time being for the investment of trust funds of trust companies or funds of savings banks''.

We have mentioned the fact that the trust instrument provides that annuities should be paid W. E. Miner, H. T. Miner and the latter's wife. These annuities do not run concurrently, but successively. The instrument provides that there should be paid to W. E. Miner and to H. T. Miner and to their survivor all of the net income from the two-story building and one-half of the net income from the eight-story building. Subsequent paragraphs provide the manner in which the income is payable to the survivors of these two men, and finally makes provision for the payment of the annuity to the survivor of the three Miners. Upon the death of the last of the three the entire net income becomes payable to the state for purposes for which the trust was created. In order to assure the Miners of a sufficient income the instrument provides that during their lives some items of expense may be ignored. For

instance, contributions into the sinking fund may be lessened during their lives. It also provides that in the event real property taxes should be exacted they should be paid from the state's portion of the fund, and not out of that payable to the Miners. The same is true of attorneys' fees.

The record does not disclose the age of W. E. Miner when the instrument was executed, but a witness testified that at the time of the trial, one year later, H. T. Miner was 71 years old and that his wife, Virgie, was then 50. About the time the trust instrument was executed the State Board of Higher Education adopted a resolution accepting the provisions of the indenture of trust and expressing the state's purpose to abide by them. Concurrently with the execution of this instrument, the plaintiff assumed charge of the property. About two months later W. E. Miner died.

May 24, 1933, H. T. Miner and the plaintiff executed another instrument which recited that H. T. Miner granted to the plaintiff all other rights, titles, etc., reserved to him by the previous instrument, "but upon the condition that there shall be paid to the donor (H. T. Miner) out of the net income from said properties accruing or to accrue to the donor, pursuant to the terms of said trust agreement, the sum of $250 per month, payable monthly, which sums shall be cumulative; that is to say, any deficiency in any and all monthly payments shall be made good out of any subsequent net income which shall become applicable thereto. * * *"

At the time of the trial in May, 1934, H. T. Miner and his wife were still living. Although approximately $3,000 should have been paid to Miner upon his annuity, only $450 had been paid. He had waived payment of the balance so as to enable the plaintiff to remodel the

interior of the building for the occupancy of new tenants. For similar purposes the mortgagee under the aforementioned mortgage had temporarily waived payment to it of approximately $1,500 of monthly installments upon principal. At the time of the trial $58,500 remained unpaid upon the mortgage. The $2,100 Eaton note and the $1,200 Slater note remained unpaid. Of the 1932 taxes $900 has not been paid. The plaintiff insists that the state is now the owner of the property and, hence, that unpaid balance has been cancelled. The 1933 tax amounting to $7,083.11 has not been paid.

According to Professor C. L. Kelly, whom the university assigned to this property, pursuant to the requirements of the trust indenture, the excess of income over expenditures in the 13-month period of March 1, 1933, to March 31, 1934, was $14,359.93. In those expenditures nothing was included for payment of real property taxes, principal upon mortgage, the annuities, remodeling expenses, and contributions to the sinking fund. The 1933 taxes—if their payment is required—amount to $7,083.11. Thirteen monthly payments of $312.50 each upon principal total $4,062.50. Thirteen annuity payments of $250 each aggregate $3,250. The remodeling expenses incurred in this 13-month period aggregated $4,539.94. Contributions to the sinking fund in this 13-month period, as estimated by the building's auditor, amount to $7,366. These sums aggregate $26,301.55 and exceed to the extent of $11,941.62 the aforementioned balance of $14,359.93. But we have included only 12 months' taxes. Taxes accrued in 1933 against this property at the rate of approximately $590 per month, or $7,670 for a 13-month period. If we ignore the tax item and consider remodeling as a capital expenditure, the excess of income over expenditures in the 13-month period is still insufficient to take care of

the 13 $312.50 payments upon principal, the annuity and the contributions to the sinking fund.

The defendants' brief, in part, charges that the trust agreement was executed by the donor in an effort to avoid the payment of taxes. It claims that in this manner W. E. Miner sought to appropriate the tax money for annuity purposes. While we believe that the earnings of the property are short of existing needs, we are unwilling to believe that the trust agreement was executed for any improper purpose. We have reviewed the above figures, not for the purpose of determining motives but because they serve purposes which we shall later consider.

The above, we believe, states the essential facts.

Section 69-101, Oregon Code 1930, provides:

"All real property within this state, and all personal property situated or owned within this state, except such as may be specifically exempted by law, shall be subject to assessment and taxation in equal and ratable proportion."

Section 69-104, Oregon Code 1930, provides:

"The following property shall be exempt from taxation: (1) all property, real and personal, of the United States and this state   *   *   *.''

Section 69-102, Oregon Code 1930, provides:

"The terms 'land', 'real estate' and 'real property,' as used in this act, shall be construed to include the land itself, whether laid out in town lots, or otherwise, above and under water, all buildings, structures, substructures, superstructures and improvements erected upon, under or above, or affixed to the same, and all rights and privileges thereto belonging or in any wise appertaining; also any estate, right, title or interest whatever in land or real property, less than the fee simple; *   *   *''

Section 35-4701, Oregon Code 1930, provides:

"The general powers and duties of the board of regents [state board of higher education] 'shall be as follows: * * * (2) To manage, control and apply all property, of whatever nature, which may hereafter be given to or appropriated for the use, support or benefit of the university, according to the terms and conditions of such gift or appropriation. Legal title to all real property acquired by the University of Oregon shall be taken and held in the name of the state of Oregon. Legal title to all real property heretofore or hereafter conveyed to the regents or board of regents of the state university or University of Oregon, or to the University of Oregon, or to the state university, is and shall be deemed to be conveyed to and vested in the state of Oregon. * * *"

The plaintiff contends that in the contemplation of a court of equity the state is the owner of this property and that, therefore, the property is exempt from assessment for taxes. The defendants contend that since the legal title is not reposed in the state the property is not exempt.

As is evident from the above facts, the legal title to this property is vested in the plaintiff, a corporation organized for profit, and which, therefore, is not exempt from the payment of taxes. While the state has a beneficial interest in the property, its beneficial interest is not the only one created by the indenture of trust. An annuity of $3,000 is payable to H. T. Miner who, according to the American Experience Table of Mortality, has a life expectancy of eight years, and, upon his death, an annuity of $2,400 becomes payable to his widow who has a life expectancy of 20.91 years. In the meantime, $3,300 must be paid to the holders of the two notes which apparently are overdue. A sum in

excess of $500 per month must be paid upon the mortgage note to take care of the installments of principal and interest. Eventually, the property may yield an income to the state, but if before that day the mortgage should be foreclosed or H. T. Miner should revoke the trust for the state's failure to conform to the provisions of the trust instrument, as he has a right to do under its express provisions, the state would receive nothing. These are not remote possibilities. It will be recalled that it recently became necessary to omit a series of payments to H. T. Miner and to the mortgagee. It is apparent from the data reviewed in the preceding paragraph that there is no immediate prospect for the state to receive an income from the property. In the meantime, the state must provide at its own expense for the management of the building a faculty member of the university. In short, neither the property nor its income is now being devoted to a public use. It is now serving only the purposes of the Miners and their creditors. Further considering the nature of the state's interest, if any, in this property, it will be borne in mind that the state has virtually no voice in the management of the property nor control over the disposition of the income—unless we deem the authority which the committee of faculty members and the board of regents may occasionally exercise as being the voice of the state. Even this limited authority amounts to virtually nothing so long as H. T. Miner lives. Control over the disposition of the funds is given to the Miner Professor of Real Estate and Insurance virtually free from restraint. The board of regents is responsible for his appointment, but having been appointed the Miner fund is under his control. In short, the state has really no control over the fund or the real property. It is a mere conduit through which the

net income of the property, if there ever is any, passes to the ultimate beneficiaries of the trust.

In determining suits concerning the taxation and exemption from taxation of property, some courts declare that if the legal title is vested in a non-exempt individual or entity, the property is subject to taxation. They express an unwillingness to consider equities, stating that tax assessors are not equipped to assess such estates. They declare that the equitable doctrine of conversion is not employed by the law of taxation. This rule received recognition by this court in *Nehalem Timber Co. v. Columbia County,* 97 Or. 100 (189 P. 212, 191 P. 318). In that case, the decision, written by Mr. Justice BURNETT, after referring to what is now §§ 69-101, 69-231 and 69-102, Oregon Code 1930, stated:

"It is a general principle that taxes follow the legal title, and this seems to be the sense and spirit of this statute. It refers to the land itself, which includes the growing timber thereon. The taxing power is not concerned with indefinite equities. It is said in Section 3586, L. O. L., as so amended, that 'No assessment shall be invalidated by a mistake in the name of the owner of the real property assessed, or by the omission of the name of the owner, or the entry of a name other than that of the true owner, if the property be correctly described.' All of which indicates that the legal estate alone is the subject of taxation. * * * 'All property, real and personal, of the United States and of this state, except land belonging to this state held under a contract for purchase thereof,' is exempt from taxation: Section 3554, L. O. L., as amended by Chapter 4, Laws of 1913. In an extended note to Mint Realty Company v. Philadelphia, 218 Pa. Sta. 104 (66 Atl. 1130, 11 Ann. Cas. 388), the doctrine is established that until full completion of a contract to purchase realty from the United States, the land is not taxable as against the purchaser. The doctrine of that case and its note is applicable to the interest of the United States in the realty here

involved, so far as the same is affected by the executory contract to purchase the timber. On the principle that the legal title alone is subject to taxation, and the only semblance of it being the $2.50 per acre already mentioned, vested in the Railroad Company, the effort to tax the plaintiff at the largely increased value upon its bare equity was, pro tanto at least, a cloud upon its title and under the authority of O'Hara v. Parker, 27 Or. 156 (39 Pac. 1004), being the owner of an equitable estate which was liable to be defeated by the enforcement of the assessment, it was entitled to maintain the suit to remove the cloud.''

In that case the facts were that the plaintiff had a contract to purchase from the United States, at a price of $192,498.13, a parcel of real property in which a railway company had an interest to the extent of $2.50 per acre. After the plaintiff had made a substantial payment upon the purchase price the county in which the land was situated undertook to tax the plaintiff's interest. The plaintiff then instituted a suit similar to the one which we are now considering to remove the assessment on the theory that it constituted a cloud upon the plaintiff's title. In holding that the plaintiff had no assessable interest, this court employed the language above quoted. In *Pacific Spruce Corporation v. Lincoln County,* 21 Fed. (2d) 586, the United States District Court for Oregon, under circumstances very similar to those before this court in *Nehalem Timber Co. v. Columbia County,* and applying virtually the same sections of our laws, reached a similar result. The plaintiff in that case had contracted to purchase at a price of two million dollars a tract of land from the United States Spruce Production Corporation, a federal agency. After it had paid one million dollars upon the purchase price ''the defendants assessed the right, title and interest of the plaintiff in the properties sub-

ject to the paramount title thereto of the United States". Defendants sought to sustain their assessment upon the theory that the beneficial interest was in the plaintiff, that the federal government possessed merely a lien to secure payment of the balance of the purchase price, and that the plaintiff's interest was taxable. The decision cited *Nehalem Timber Co. v. Columbia County* as authority for the statement that 1919 Session Laws, chapter 166 (§ 69-102, Oregon Code 1930), means "under this enactment, the legal title to real estate alone is the subject of taxation, and all lesser estates are merged therein for such purpose". Referring to § 69-104, Oregon Code 1930, the decision stated: "This section has reference to the res. Consequently when the legal title to real property is vested in the United States, all outstanding interests or estates therein less than the fee are exempt from taxation. Obviously the assessment in question can not be sustained under the laws of Oregon."

The courts generally hold that property of the United States under contract of sale is not taxable unless nothing remains to be done except to deliver to the purchaser his instrument of conveyance. Nevertheless, in the decisions of the above two cases our court and the federal district court placed upon the sections of our code with which we are concerned the interpretation above noted.

In *The People v. University of Illinois,* 328 Ill. 377 (159 N. E. 811), the facts were: A donor conveyed to the trustees of the University of Illinois two farms "to constitute a trust fund for all time for a two-fold educational purpose: (a) For the education of young men and young women as hereinafter set forth; and (b) for the improvement of the agriculture of Illinois by example and by experiment as hereinafter set forth."

The deed provided that the property should be under the control of the trustees and that all of the net income from the farms should be employed as a loan fund to aid worthy students. The instrument further provided that the local circuit judge should be arbitrator of any disputes concerning the trust estate, and authorized him, in the event that the income increased beyond student loan needs, to order the surplus applied to agricultural and home economics research. The county in which the farms were situated sought to subject them to taxation. The Illinois constitution provided:

"The property of the state, counties and other municipal corporations, both real and personal, * * * may be exempted from taxation."

A statute exempted from taxation "all property of every kind belonging to the State of Illinois". In holding that this property did not belong to the state of Illinois, within the contemplation of these constitutional and statutory provisions, and that it was therefore subject to taxation, the supreme court of Illinois held:

"From these authorities the rule is to be deduced that ownership of property in the State, such as exempts that property from taxation, must be exclusive and free from any kind of legal or equitable interest in anyone else. If the State holds property as trustee, not for the public but for the benefit of specified private persons, such property cannot be said to belong to the State so as to exempt it from taxation. It seems clear that the State does not have exclusive ownership of the property involved here. It may not sell it except under the terms, in the manner and for the purposes indicated in the trust. It may not exercise complete control over it even for the purposes set forth in the deed of trust, since that deed specifies the management of the farms shall be by a committee consisting of members of the

faculty of the university who are not a part of the board of trustees, and not, therefore, a part of the body corporate of the university. It further appears in the application of this test, that, acting as trustee, the State, through the board of trustees of the university, does not hold the property in trust for the public, but that a certain class of specified private persons are the only ones to receive beneficial interest therefrom. The state cannot, therefore, be said to own the property to the exclusion of any legal or equitable interest in anyone else. Nor can it be said that the property belongs to the State by reason of the provisions of clause 17 of the articles of trust permitting the use of surplus income, on order of the circuit court, for the purpose of conducting agricultural or home economics research work. * * * the application of such surplus income is not left to the exclusive control of the university but can be so used only on order of the circuit court; and second, it is not at all probable that in carrying out this trust there will ever be such a surplus. There are 350 acres of this land. From facts of common knowledge it is readily determined that the net income of this land can scarcely be said, with any certainty, to be sufficient to permit a surplus * * *. This provision is contingent and its application so very uncertain that it cannot be said to bring the property within the rule. Even though there should be such a surplus, the State in receiving the same for the purposes of the university would be receiving but a part of the benefit of the fund, as the balance, and by far the larger part, would still be devoted to the benefit of private persons.''

After that decision had been announced the legislature enacted the following statute:

''Within the intent and meaning hereof, all property whatsoever, real and personal, whether held in trust or absolutely, heretofore or hereafter transferred, donated to or held by the State, or any public educational institution thereof, for the encouragement of education, shall be deemed property of the State of Illinois.''

In *The People v. University of Illinois,* 357 Ill. 369 (192 N. E. 243), the court, in holding this statute ineffective to exempt the two farms from taxation, declared:

"It is beyond the power of the legislature to add to or broaden the exemptions which the constitution thus permits it to provide  *  *  *. Our holding in People v. University of Illinois, supra, that the property in question did not belong to the State within the meaning of the act, was as well a holding that it was not property of the State within the meaning of the constitutional provision authorizing exemptions."

See also *Trustees etc. v. Champaign County,* 76 Ill. 184, where the property was held exempt from taxation even though title was vested in a trustee. However, the University's beneficial interest was exclusive.

In *Grand Lodge of Maryland K. P. v. Mayor etc. of Baltimore,* 157 Md. 542 (146 Atl. 744), the court determined the effect of a tax exemption statute which provided:

"The provisions of this sub-title shall not apply to *  *  *  buildings, equipments and furniture of hospitals, asylums, charitable or benevolent institutions or to the grounds appurtenant thereto in any city or incorporated town in this state which are necessary to the respective uses thereof."

In 1926 a lodge authorized the purchase of a site and the construction of a lodge building thereon and appointed a building commission. The latter, in order to facilitate the program, incorporated the Maryland Pythian Castle Building Commission possessed of a capital stock of $50,000. Only two shares of a par value of $10 each were issued. It at once proceeded with the performance of the program assigned to it and never undertook anything else. It purchased a site, erected

a lodge structure thereon and then delivered possession to the grand lodge. In holding that the property was subject to taxation during the year in which title was vested in the commission, the court declared:

"The general rule is that unless otherwise prescribed by statute the trustee, as the owner of the legal estate, would be assessed with the value of the land * * *. This rule is commended by its utility, simplicity and universality; and so makes for the certainty and prompt collection of taxes upon real estate. * * * The petitioners, however, ask that the court disregard this established rule upon the theory that the beneficial owner is the real and substantial owner; * * * The argument is that the taxes paid by the trustee are actually borne by the beneficial owner since the estate of the trustee was wholly legal although its trust was an active one until possession and title were taken by the grand lodge. To reach this conclusion it is however, necessary to abandon a principle of taxation without any sanction from the legislature and to ignore a construction of the tax laws of the state which the court has consistently applied."

From *Hill v. Williams*, 104 Md. 595 (65 Atl. 413), the following is taken:

"As the fee simple title remained in the Slingluff estate the land was properly assessed to that estate. It was no part of the duty of the Appeal Tax Court to inquire into or separately value the interest or easement which Mrs. Hill secured under the deed. And there is nothing in our general tax system which compels the collector to examine what title a party has to land with which he is assessed. The assessments are made by other officers, and he is not required to review or to verify their proceedings before making a sale. Cooper v. Holmes, 71 Md. 20. It is not compatible with public convenience and the prompt collection of revenue for the State to trace out all the subdivided or qualified interest that may be held in real estate, and to seek to hold the various owners responsible. Its policy is to

assess the fee simple value of the land to the holder of the possession, where its real owner is not apparent or accessible, leaving the parties interested to adjust the proportions of liability between themselves.''

In *Latta v. Jenkins*, 200 N. C. 255 (156 S. E. 857), the plaintiff who, as trustee, held title to a parcel of property used for business purposes, sought a decree exempting 55 per cent of the value of the property from taxation because he was bound to sell the property within a five-year period and to pay 55 per cent of the proceeds to religious and charitable institutions. Apparently these institutions were exempt from taxation by local statutes. In rejecting the plaintiff's contention that 55 per cent of the value of the property was exempt, pending sale, the court declared:

''No part of said property was owned or occupied during the year 1928 by the beneficiaries of the trusts established by said will. * * * None of said beneficiaries own or occupy said property or any part thereof, for religious, educational, or charitable purposes. * * * The instant case is distinguishable from Central Bank & Trust Co. v. Commissioners of Yancey County, 195 N. C. 678, 143 S. E. 252. In that case, under the provisions of a judgment by consent of all parties interested in the assets of the estate of J. W. Higgins, deceased, certain religious, educational, and charitable institutions were the owners of an undivided half interest in said assets, which consisted of notes in the hands of certain persons for collection. It was held that said one-half interest in said notes was exempt from taxation under the statute. In the instant case, the title to all the property on which taxes were levied by Buncombe County for the year 1928 was in the plaintiff, as trustee. * * * The doctrine of equitable conversion has no application in the instant case. This well established doctrine cannot be invoked to affect the liability of property to taxation by the state or by its political subdivisions.''

From *Michigan Trust Co. v. City of Grand Rapids,* 262 Mich. 547 (247 N. W. 744, 89 A. L. R. 840), we quote:

"Personal property in the hands of a trustee is assessed to the trustee and not to the beneficiaries of the trust, for the reason the legal title is in the trustee and not in the beneficiaries of the trust."

In addition to citing the authorities just reviewed, the defendants, in support of their contention that the property under consideration is not exempt from taxation, cite several decisions which hold that property owned by the federal government, subject to the rights of a purchaser or a prospective donee, is not taxable by a state unless there remains nothing to be done except to deliver the patent or other instrument of conveyance. Illustrations of these authorities are *Mint Realty Co. v. Philadelphia,* 218 Pa. 104 (66 Atl. 1130), 11 Ann Cas. 388), and *Copp v. State of West Virginia,* 69 W. Va. 439 (71 S. E. 580, 35 L. R. A. (N. S.) 669) ; *Witherspoon v. Duncan,* 4 Wall. 210 (18 L. Ed. 339) ; and two of the decisions reviewed in preceding paragraphs. These authorities hold that as long as the purchaser or entryman must still make a payment or perform some other act precedent to his right to receive title the property is not subject to local taxation. As long as the federal government has any interest whatsoever in the land it is not subject to local taxation. The same rule is applicable to land owned by a state: 26 R. C. L., Taxation, p. 331, § 290.

In support of its contention that the limited beneficial interest which the state has in this property is sufficient to exempt it from taxation, the plaintiff cites decisions which we shall now review.

In *State Land Settlement Board v. Henderson,* 197 Cal. 470 (241 P. 560), it appeared that a California stat-

ute had created as a state agency the State Land Settlement Board and had given it authority to purchase land, improve it for settlement purposes by installing irrigation systems, constructing cottages, fencing the land, etc., and then selling the land to settlers upon the deferred payment plan. The issue determined by the court was whether land owned by the board and which no purchaser had yet contracted to buy was subject to taxation. The California constitution provides:

"Property * * * such as may belong to the United States, this State, or * * * shall be exempt from taxation."

The court held:

"We have no doubt but that property acquired by the board for the purpose of carrying out the objects of the act belongs to the State within the intent and meaning of the constitutional provision."

It held the land exempt from taxation.

In *Board of Regents v. Hamilton,* 28 Kan. 376, the facts were: The federal congress granted to the state of Kansas 90,000 acres of land for the endowment of an agricultural college. The state accepted the grant, created the Kansas Agricultural College, and by legislative enactment provided that the granted land should be used for the endowment of the college. Authority was given by the legislature for the sale of the land and the investment of the proceeds in mortgage-secured notes. Later the board of regents loaned a sum to a borrower secured by a mortgage; he defaulted, the mortgage was foreclosed and the mortgaged premises were bid in by the regents. The board of regents, under the legislative enactment, was the governing board for the college. The issue determined in the decision was whether this parcel of land was subject to

taxation by the authorities of the county in which it was situated. The statute provided:

"All property belonging exclusively to this state or to the United States"

shall be exempt from taxation. In holding that the property was not taxable, the court stated:

"It will be noticed that this subdivision refers to actual ownership, and not to the mere location of the legal title. The controlling question in matters of taxation is, who in fact owns the property, and not where rests the mere legal title. * * * The Kansas state agricultural college is a state institution; it is absolutely and exclusively under the control of the state; its properties belong to the state. * * * It is enough to know that the properties are the properties of the state; and while to-day it may place the control of such properties in the hands of one party, to-morrow it may place such control in the hands of another. * * * This agricultural college is not a private college, nor a mere institution organized under the general corporation laws, whose existence the state by virtue of its control over the general corporation laws controls, but is on the contrary a mere instrument created directly by the state, and by which it manages the properties conveyed to it by the United States. It is in fact simply an arm by which the state holds and controls the properties given to it by the United States. * * *"

In both the California and Kansas decisions the name of the state agency was merely a different appellation for the state. The agency was not trustee for the state, but was a part of the state itself.

In *Litz v. Johnston*, 65 N. J. Law 169 (46 Atl. 776), the title to the property which the tax officials assessed stood in the name of Ferdinand Litz who was the head of a missionary society which was the United States agency of a Catholic charity with headquarters in Rome. The property, according to the decision, was be-

ing used for purposes "exclusively charitable". The New Jersey statute exempted from taxation property "used exclusively for charitable purposes". This property was of the character described in the statute. The court held that it was exempt from taxation. The fact that the title was vested in the priest and not in the corporation was not controlling.

One of the statutes construed and applied in *Watson v. City of Boston,* 209 Mass. 18 (95 N. E. 302), exempted from taxation "the personal property of literary, benevolent, charitable and scientific institutions". Another statute provided that, apart from specified exceptions, personal property held by a trustee, the income of which was payable to another person, should be assessed to the trustee. A trustee held personal property in trust for the Wentworth Institute, an educational institution. According to the decision:

"The whole beneficial interest is in the institution. * * * Nor can it be material that the property is by law assessable to the trustee and not to the person entitled to the beneficial interest. The exemption is based upon the use which is presumed to be made of the fund, namely, for an educational purpose, and not upon the persons in whom stands the legal title."

The court held that the equitable interest of the Wentworth Institute in the trust fund was property within the meaning of the exemption clause of the statute and that it was exempt from taxation. It will be observed that no one but the institute shared in the beneficial interest, and that the court construed the statute as making exemption dependent upon the use to which the property was being applied, and not to the status of the title.

*Sargeant & Lahr v. Herrick & Stevens,* 221 U. S. 404 (55 L. Ed. 787, 31 S. Ct. 574), merely applied the

principle stated in *Mint Realty Co. v. Philadelphia,* supra, and *Copp v. State of West Virginia,* supra.

In *State v. Watkins,* 108 Minn. 114 (121 N. W. 390), the facts were: Cornelia Appleby, a very wealthy woman, by her will provided for the establishment of a public charity to be known as the Amherst H. Wilder Charity, and directed that the trustees of the charity set aside enough of the securities bequeathed to them by her so as to provide an annuity of $10,000 for the latter's widower, unless he remarried. Upon his death or remarriage the income from the securities thus set apart was to be used for charitable purposes also. For the purpose of assuring this income, the trustees set aside securities valued at $346,515. A Minnesota statute provided that "all moneys and credits belonging exclusively and appropriated solely to sustaining" public charities were exempt from taxation. Without quoting this statute, the court held that the securities set aside to provide the widower's annuity were not taxable. The following is taken from the decision:

"* * * If the whole income of the property to be set aside had been given to Dr. Appleby for life or so long as he remained unmarried, it may be conceded that his interest would have been taxable, and that it would have been the duty of the executors or trustees to pay the taxes assessed upon his interest and deduct the amount thereof from the income. But such is not the case, for, as we have stated, the gift to Dr. Appleby was a conditional annuity of $10,000. Such being the case, he had no taxable interest in the property (Rev. Laws 1905, § 797, subsec. 7), and any tax levied thereon could not be deducted from his annuity, but would have to be paid out of the property constituting the endowment of the nontaxable charity corporation. * * * The annuity, however, in this and in all similar cases, would not be a charity, and the statute expressly provides for the taxation of the income of every annuity,

unless the capital of the annuity be taxed within this state. Rev. Laws 1905, § 797, subsec. 7. It is clear that the part of the residue of the estate which was set apart for the Dr. Appleby Trust was exempt from taxation on May 1, 1907, for the same reason that the rest of the estate was so exempt. Any attempt to tax either was an attempt to tax the property of a public charity.''

The court repeatedly mentioned the fact that ''the gift to Dr. Appleby was a conditional annuity of $10,000''. It pointed out that ''he had no taxable interest in the property'' and stated that any tax levied upon the securities set apart to produce his annuity ''would have to be paid out of the property constituting the endowment of the nontaxable charity corporation''. It will be observed that in that case the securities were in the possession of the charity's trustees.

In *People ex rel. Crook v. Wells,* 179 N. Y. 257 (71 N. E. 1126), the facts were: Personal property in the possession of one Crook, as executor of the estate of William Stuart, deceased, was assessed by the tax authorities upon a valuation of $154,000. The residuary clause of Stuart's will gave the residue of his estate to the Masonic Guild which was admittedly a charitable or benevolent corporation and, therefore, exempt from taxation. Eighty-five thousand dollars of the property in the executor's possession was the portion which the guild would ultimately receive for its charitable and benevolent activities. In holding that this $85,000 portion of the estate was exempt from taxation, the court said:

''* * * That the corporation at the time of the assessment was the absolute owner of the $85,000 in personal property assessed is, I think, too clear for controversy. The residuary estate vested in the corporation at the moment of the death of the testator, and

at no time since his death was the property bequeathed to the charitable corporation subject to taxation.''

It held that this was true even though a New York statute provided that if a person hold taxable property as agent, trustee or executor he shall be assessed therefor. The court construed this statute to mean that the property is assessable only in the event that it is taxable property; that is, property not employed for charitable or benevolent purposes.

In *Ellsworth College v. Emmet County*, 156 Iowa 52 (135 N. W. 594, 42 L. R. A. (N. S.) 530), the facts were that Eugene S. Ellsworth by his will provided that the trustees nominated in his will should dispose of a large tract of land which he owned at the time of his death and out of the proceeds use $25,000 for the establishment of a home for the aged, and then pay all of the balance, together with the income produced by the property, before its sale, as an endowment for Ellsworth College, an existing institution. The Iowa statute provided:

''The following classes of property are not to be taxed * * * all grounds and buildings used for public libraries * * * and for literary, scientific, charitable * * * institutions * * * moneys and credits belonging exclusively to such institutions * * * provided, however, that real estate owned by an educational institution of this state as part of its endowment fund shall not be taxed.''

In holding that this land, apart from the $25,000 portion reserved to the home for the aged, was not subject to taxation, the court said:

''That statute does not require that the college be the owner of the legal title to the property. It says that real estate owned by an educational institution as a part of its endowment fund shall not be taxed. The word 'owned' is broad, and undoubtedly compre-

hends equitable, as well as legal, ownership, and the question of exemption, so far as the interest of the college is concerned, depends primarily upon whether or not the college is the equitable owner of the property devised and of the income derived therefrom while the property is in the name of the testamentary trustees. * * * Of course, the doctrine of equitable conversion does not apply to revenue statutes and convert real estate into personalty or personalty into real estate; but in dealing with the subject of taxation and construing exemption statutes, the doctrine of equitable conversion may be resorted to in order to ascertain the nature of the equitable ownership of the beneficiary. * * * The gift to the home was quite as specific as to the college, and each has an equitable ownership in the lands; the home to the extent of $25,000, and the college to the remainder. No sound legal or equitable reason appears why the lands should be wholly exempt because the college is entitled to the larger share of the funds. Its equities are no greater than those of the home for the aged, and neither the money nor the property given to the home is exempt under any statute to which our attention has been called. The result of the whole matter is that the lands were exempt from taxation in the hands of the trustees, save as to the amount given in trust for the establishment of the home for the aged, to-wit, the sum of $25,000. To that amount, and to that only, should the lands have been assessed. In other words, there should have been deducted from the total value of the lands assessed all in excess of $25,000. All this was not done, but the lands were decreed to be assessable to their full value without any exemption.''

In *Williston Seminary v. County Commissioners,* 147 Mass. 427 (18 N. E. 210), a statute provided:

''Personal property placed in the hands of a corporation or individual, as an accumulating fund for the future benefit of heirs or other persons, shall be assessed to such heirs or persons, if within the commonwealth.''

Property was being held by a trustee which would eventually become the property of the seminary, but which was charged with some annuities payable to non-exempt individuals. These annuities, according to the decision, "would be but a small proportion of the income from the fund; and other funds were also charged with the payment of them, and were more than sufficient for such payment". A statute provided that the personal property of literary institutions was exempt from taxation. The seminary was not now entitled to receive the property thus held in trust, and, that being true, the tax officials proposed to exact a tax from the seminary. The court, in holding that the property was exempt, declared the statute of exemption was not limited to personal property in possession. We quote from the decision:

"But especially in the present case the property held in trust is to all practical intents and purposes the property of the seminary. The legal title is in the trustees; but the whole beneficial interest, unless, indeed, the annuitants are to be taken into account, is in the seminary. It would be a strained construction of the statutes to hold that this fund is to be considered as property of the seminary for the purpose of taxation but not for the purpose of exemption."

Apparently the interests of the annuitants were deemed inconsequential. It will be observed that they were also a charge upon other property which was more than sufficient in value to discharge them.

In *Norton's Ex'rs v. City of Louisville,* 118 Ky. 836 (82 S. W. 621), the facts were: The proceeds of the real estate which the city proposed to tax were payable to the Louisville Baptist Orphans Home, a tax-exempt charity, by the terms of the will of William Norton, deceased. The will directed the executors to sell this

property and, after all bequests had been paid, to pay the fund accumulated from the sale to the above-named charity. The executors were also directed to establish two minor trust funds for two taxable individuals; but personal property in their possession was sufficient to take care of those items. The court held that the property was exempt from taxation while the trustees were endeavoring to convert it into money. It pointed out that the charity was the equitable owner, although it was not given immediate control of the fund. We quote from the decision:

"In the case at bar it is admitted that the entire proceeds of the property sought to be taxed, and the income arising therefrom, will go to the orphans' home under the will. * * * When one is the equitable owner of property and is entitled to the income from it he has the enjoyment of every benefit that could come to anyone who might own the property. To hold that the property should be taxed because of its control by others than the trustees of the orphans' home for a specified period is giving effect to the shadow and not the substance."

It made no mention of the two incidental trusts except to state that other property in the possession of the executors was sufficient to establish them.

Other authorities cited by the parties we deem it unnecessary to review herein although we have studied them carefully. Their relationship to the issue before us is remote.

We do not believe that the above-reviewed decisions are in serious conflict when the nature of the local statutes is considered. All seem to recognize the same general principle of law. They may be summarized thus: In the two Illinois decisions concerning the farms bequeathed to the University of Illinois, the court held that the state's equitable title was insufficient to ex-

empt the property from taxation; but the state's equitable interest was not the equivalent of sole beneficial ownership. The immediate beneficiaries were students in need of financial assistance. Only in the event a surplus remained after their needs have been satisfied could the state derive any direct benefit from the trust. In the Maryland case the court applied the rule stressed in the Illinois decisions, that the status of the ownership of the fee, rather than the nature of the use, determines the issue of exemption. However, it must be borne in mind that when the Maryland tax was imposed the property was not being used for benevolent purposes. Hence, in that case when the tax was imposed the fee was not vested in the benevolent association, and the property was not being used for a tax-exempt purpose. In the annotation appearing at page 671 of Volume 34 A. L. R., the editor cites several authorities holding that land on which buildings to be used for charitable purposes are in course of erection is not exempt from taxation. In *Latta v. Jenkins,* supra, the fact that 55 per cent of the proceeds derived from the sale of a business building must be paid to a charitable institution was held insufficient to exempt 55 per cent of the property's value from taxation. Here, as in the Maryland case, the present status of use determined the issue of exemption and taxation. Present use, rather than ultimate use, settled the issue. The decisions concerning the taxation of property, the legal title to which reposes in the United States, hold that as long as the federal government possesses any interest whatever in the property it is not taxable locally. In other words, as long as the government can declare a forfeiture, the state can not impose a tax. The converse of this rule is not questioned in any of the authorities reviewed above; that is, if the state's equitable title is not exclusive the

property is not exempt. *State Land Settlement Board v. Henderson,* supra, and *Board of Regents v. Hamilton,* supra, merely found that the title was vested in the state under an assumed name. In those two cases no trustee had been injected between the state and the fee. In *State v. Johnston,* supra, since the statute provided that the test of exemption was the nature of use, and not the character of ownership, the court held that the property, which was being used for purposes "exclusively charitable", was exempt from taxation. The same was true in *Watson v. City of Boston,* supra. There a Massachusetts statute, according to the court's interpretation, based exemption "upon the use" to which the property was being applied. In both of those instances the property at the time the tax was imposed was being applied to a tax-exempt purpose; and in both instances no one but the exempt institution had any interest whatever in the beneficial ownership. *State v. Watkins,* supra, raised the question of what should be done when the charity's beneficial interest in part of a fund is postponed through necessity of paying an annuity. The charity was the owner of the entire fund and had all of it in its possession. In those particulars the situation differed from the facts present in *Latta v. Jenkins.* Since the charity owned the fund, and the annuity owned none of it but was required by another statute to pay a tax upon his annuity, the court held that the fund was tax exempt. The fact that the charity would not acquire the beneficial interest in the part segregated to assure payment of the annuity until the annuitant's marriage or death, was deemed unimportant. Somewhat similar is *People ex rel. Crook v. Wells,* supra. Here, while the portion of the estate which would eventually become the property of the Masonic Guild was in the custody of the executors it could not be

applied to charitable purposes. But no one except the guild had any beneficial interest in it. The fact that its charitable use was postponed while the estate had been fully probated was deemed unimportant under the New York statute regulating exemption. Substantially the same situation existed in *Ellsworth College v. Emmet County*, supra. There the proceeds derived from the sale of a parcel of land were to be distributed thus: $25,000 to a non-exempt organization, and the balance (by far the larger part) to a college. In the meantime, the income from the property was to be credited to the college. Although the latter would not acquire the residue at once, nevertheless its interest in that part of the fund was exclusive and was returning to it a present benefit—income. In part, these two decisions seem to be in conflict with *Latta v. Jenkins*, but it is well to note that in these two cases the properties had moved further in the direction of the charities than in the Latta case. In the first of these two cases the court spoke of the guild as being already "the absolute owner of the $85,000 in personal property" then in the custody of the executors, and in the other case the court stressed the fact that the three trustees charged with the sale of the land were also trustees of Ellsworth College. *Williston Seminary v. County Commissioners*, supra, and *Norton's Ex'rs v. City of Louisville*, supra, are very similar to the two decisions just mentioned. In each of them an additional feature was present—the trustees were required to pay small annuities. But in each instance the testator had provided sufficient other property to amply take care of the annuities. The annuity features were treated in the decisions as unimportant.

From those of the above decisions in which exemption was sought on the theory that the state owned the property, it will be observed that the exemption was

recognized when it appeared that the fee was vested in the state's name. But when a trustee intervened between the state and the fee, and the trustee was required to devote the income to special purposes with only a remote interest available to the state, the exemption was refused. In the decisions where the exemption was claimed under the provisions of statutes granting it to charities and educational institutions, the exemption was allowed if the title was vested in the name of the charity, and if the property or fund was being used for tax-exempt purposes. But if a trustee held title and the beneficial interest of the tax-exempt institution was free of other equities, the property or fund was held exempt from taxation, unless local legislation required that the property must be devoted to charitable uses at the time the tax was imposed and it was not being so employed. These are the rules which we deduce from the foregoing authorities.

In *Moorman's Exr. & Trustee v. Board Supervisors*, 192 Ky. 242 (232 S. W. 379), not cited by counsel, the court held that property bequeathed to trustees and which would become the property of a charity, in the event that the beneficiary named in the will died without issue, was not entitled to exemption under a constitutional provision which exempted the property of ''institutions of purely charitable character''. And in *Barr v. Geary*, 82 Ind. App. 5 (142 N. E. 622), the court held that real property, the title to which was vested in trustees, was not exempt from taxation when one-third of the income was payable to an annuitant, although two-thirds was payable to a public charity.

■■ The legal principles employed in the above decisions may be succinctly stated thus: Real property, the title to which is vested in the state, whether in its

name or in the name of a state agency, is exempt from taxation. It is also exempt if the state possesses the sole beneficial interest, the title being vested in a trustee. Property of charitable, educational and benevolent societies is exempt from taxation if the local statute so authorizes. The exemption of such institutions is purely statutory and, hence, the provisions of the statute govern the nature and extent of the exemption. If title to the property is not vested in the charity, and if the statute grants exemption only when title is vested in the name of the charity, the property is subject to taxation. But, if the position of the title is immaterial and the nature of the use governs exemption, the property will be held exempt from taxation if it is being devoted to a charitable use, even though the title is vested in some third person, or if the property at the time is in the custody of the executors of the estate of the deceased benefactor. Likewise, if the property is being liquidated by a trustee under the provisions of a will or trust indenture, whereby the proceeds are payable to the charity, the property will be held exempt from taxation while under liquidation.

■ It is evident that the decisions which deal with exemption of charitable, benevolent and educational institutions are not entirely in point. The exemption of such institutions is purely statutory and is governed by the provisions of the exemption statute. The exemption of property owned by the state is inherent and is withheld only when a constitutional provision or a statute in unmistakable language withholds it: *City of Portland v. Multnomah County,* 135 Or. 469 (296 P. 48); Cooley on Taxation (4th Ed.), § 621; 26 R. C. L., Taxation, p. 331, § 290. And see also the following comprehensive annotations: 132 Am. St. Rep. 330 and 33 Am. St. Rep.

403. Constitutional and statutory enactments which exempt state property from taxation, in the absence of language to the contrary, are deemed merely statements of the generally recognized exemption of such property: Cooley on Taxation (4th Ed.), § 622. Constitutional provisions similar to ours (Art. I, § 32, and Art. IX, § 1) requiring uniformity of taxation do not prohibit exemption of state-owned property because state-owned property is not generally deemed a source of tax revenue, and is not regarded as property within the contemplation of taxation requirements: Cooley on Taxation (4th Ed.), § 667. The rule governing exemption of state-owned property, in the absence of constitutional or statutory qualifications, is thus expressed by Cooley on Taxation (4th Ed.), §§ 625 and 638:

"Independent of any other consideration, property can not escape taxation on the ground that it is public property unless it is in fact owned by the public as represented by the state or some local subdivision or representative thereof. However, title need not be in the name of the state or local subdivision if it is really owned by it or if it is held in trust for it. * * * On the other hand, the exemption does not extend to land or other property not belonging to the public as represented by the state, local subdivision or the like, or in which it has only some indirect or expectant interest, such as mortgagee.

"If there is no constitutional or statutory provisions expressly exempting state or municipal property, it is taxable where not devoted to public uses, although it would not be taxable if devoted to public uses. The ultimate test is not municipal ownership but public use. On the other hand, if such property is expressly exempted by the constitution or a statute, and there are no qualifying words used, the property is exempt regardless of its use; and a constitutional provision forbidding exemption of property used for private or corporate profit does not include public property."

From a comprehensive annotation appearing in 132 Am. St. Rep. 330, we quote:

"Where land equitably and in fact belongs to the state or some agency of the state, it is exempt from taxation, notwithstanding that the title thereto rests in some individual, board or commission: * * * The exemption from taxation will not be extended to property in which the interest of the state is not immediate, but very remote and contingent: Thomson v. Union Pac. R. Co., 9 Wall. 579, 19 L. Ed. 572. The interest of the state must be a present one, and not a mere reversionary interest, in order for the property to be exempt from taxation: Fall v. City of Marysville, 19 Cal. 391; State v. Proprietors of Bridges, etc., 21 N. J. L. 384."

From 26 R. C. L., Taxation, p. 331, § 290, we quote:

"The property of a state is exempt from taxation because, as the sovereign power, it receives the taxation through its officers, or through the municipalities it creates, that it may, from the means thus furnished, discharge the duties and pay the expenses of government. Its property constitutes one of the instrumentalities by which it performs its functions. As every tax would to a certain extent diminish its capacity and ability, the courts have generally been unwilling to hold that such property was subject to taxation in any form, unless it were made so by express enactment or by clear implication. The exemption of state property extends to the property of all public departments of the state even though the title is in a board of trustees or in a separate corporation, as is often the case with a state university or other state institution. It does not extend to property which belongs to a private corporation, though used for strictly public purposes."

■■ There can be no doubt that the University of Oregon is a state agency and, therefore, any property owned by it, in the absence of qualifying language forming a part of the instrument of conveyance, is owned by the state. However, it will be observed from § 35-4701,

Oregon Code 1930, previously quoted, that the board of regents is authorized to accept on behalf of the state conveyances of property only when the deed reposes title in the name of the state. It will be recalled that § 69-104, Oregon Code 1930, previously quoted, exempts from taxation "all property, real and personal, of the United States and of this state". Section 2 of the same act exempts from taxation the public or corporate properties of counties and cities "used or intended for corporate purposes". No such qualifying words are attached to the exemption recognized in state-owned property. Therefore, it is not essential to the exemption claimed by the plaintiff that the Miner buildings "should be used or intended for corporate purposes" of the state if it is true, as the plaintiff contends, that the state owns that property. Therefore, the question that confronts us is not one of use, but of ownership. The best definition that has come to our attention of what constitutes state ownership within the contemplation of such requirements is that given by Mr. Justice Cobb in *Board of Trustees of Gate City Guard v. Atlanta,* 113 Ga. 883 (39 S. E. 394, 54 L. R. A. 806). In that case the court construed a constitutional provision which provided: "The general assembly may by law exempt from taxation all public property." A statutory provision adopted pursuant thereto exempted from taxation "all public property". Then the legislature enacted an act which required that the armories used by the state militia should be deemed public property. In the instance before the court it appeared that "neither the legal nor equitable title to the property (the armory) is in the state or any political division thereof", but that the armories were devoted to public service. The essence of the court's decision, holding that the armories were not exempt from taxation, is

well expressed by Mr. Justice Cobb, the author of the decision, in a headnote written by him which we shall now quote:

"Public property within the meaning of that clause of the constitution which authorizes the general assembly to exempt from taxation 'all public property' embraces only such property as is owned by the state or some political division thereof, and title to which is vested directly in the state or one of its subordinate political divisions, or in some person holding exclusively for the benefit of the state or a subordinate public corporation."

We also quote from *Ryan v. Gallatin County*, 14 Ill. 78:

"The fifth point is, that the state is a stockholder in the bank, and therefore the owner of the property taxed in such a sense as to bring it within that provision of the statute which exempts from taxation the real and personal property of the state. The state was not in any sense the owner of the property taxed, but the title to the same was either in the bank or the assignees. It is only property which the state owns that is exempt from taxation, not that in the avails of which she may, or may not ultimately be entitled to share."

██ In the instant case the title to this property is not vested in the state nor in any state agency. The state is not even the party-plaintiff in this suit. There is no immediate prospect that the state will derive any benefit from the property; in fact, there is no certainty that it will ultimately receive any income from it. The state's beneficial interest is not exclusive, but must be shared with others whose equities are superior to the state's. The income from the property, if any should ever be received by the state, will not be subject to the control of any agency created by the legislature, but will be under the control of a committee

created by the trust indenture. In fact, nothing is really given to the state. The moment the state receives anything it is required to pass it on to the committee. Next, as we have already pointed out, the state and the trustee have virtually no control over this property. For instance, if the buildings should be destroyed by fire or other casualty, the disposition of the insurance money will be determined by H. T. Miner, and not by the trustee nor by the state.

Applying the principles of law expressed in the above authorities, it is our belief that the exemption claimed in this suit can not be granted under our statute unless (1) the fee is vested in the state, or (2) the state's beneficial interest is exclusive of all equities of non-exempt persons. It is clear that these conditions are not present. Therefore, the property is subject to taxation.

The cause will be remanded to the circuit court with instructions to enter a decree in favor of the defendants. Costs and disbursements will not be awarded.

CAMPBELL, C. J., and KELLY, BELT, BEAN, BAILEY and RAND, JJ., concur.