# WHITE CITY, OREGON, WATER SYSTEM, INC.
*v.*
## DEPARTMENT OF REVENUE

Lee Davis Kell, Kell, Alterman & Runstein, Portland, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered November 23, 1977.

CARLISLE B. ROBERTS, Judge.

Plaintiff, a private corporation not for profit, owner in fee simple of a water system, appealed to this court from defendant's Order No. A&AU 76-41, dated July 19, 1976, denying the petition of plaintiff for exemption of its water system under the provisions of ORS 307.090(1), and affirming the valuation of the property as of January 1, 1976, at $822,000.

The facts are undisputed. The issue before the court is whether the City of Medford, Oregon, has such an interest in the plaintiff's water system properties that such properties come within the legislative intention, found in ORS 307.090(1), to grant to cities exemption from taxation of properties used or to be used for corporate purposes.

Plaintiff's excellent statement of the facts (but not

the overtones), set out in Plaintiff's Trial Brief, 3-7, is adopted by the court, as follows:

"Plaintiff is an Oregon nonprofit corporation organized in 1966 to provide the financing for the rehabilitation and expansion of the White City water system.

"White City is an unincorporated area in Jackson County, Oregon, ten miles north of the City of Medford ('City'). It was developed as an industrial park for the City and for Jackson County. Within White City are 800 acres of City-owned land, the Jackson County municipal shops, the Veterans' Administration Domiciliary Center, a residential subdivision and a shopping center. Immediately adjacent to White City is the City of Medford water diversion and treatment plant.

"Prior to September 25, 1968, White City was served by a private water system. An engineering study in 1966 determined that the private system required an expenditure of approximately one million dollars for an elevated water tower and new and larger water mains to provide service that met fire, health, and industry requirements. The private system could not finance the improvements and offered to sell the system to the City of Medford. The City declined the offer because it did not have the money. The City did encourage and joined with organizations and persons interested in the White City area to develop a program for financing the required improvements.

"The program provided for the organization of Plaintiff as a single purpose nonprofit corporation to finance the rehabilitation of the water system; the management and operation of the water system by the City and a gift of the water system to the City when the debts of nonprofit were paid. In detail the program was as follows:

"White City, Oregon, Water System, Inc. (Plaintiff) was organized as an Oregon nonprofit corporation on July 22, 1966. Its Articles of Incorporation and Bylaws were approved by the City and provide that the corporation is for the purpose of improving the White City water system; that the City is to have an option to purchase the system at any time; that the City will receive the water system as a gift when the debts are paid, and that the City is to receive all assets of Plaintiff when it is

dissolved. The Articles of Incorporation prohibit amendment of these provisions.

"Next was an Operating Agreement between City and Plaintiff dated September 15, 1967 that gave the City full possession and control [as agent] of the White City water system. This control includes:

"A. The City supplies the water requirements of White City.

"B. The City operates the water system with its personnel and at cost.

"C. The City maintains the water system with its employees, equipment and supplies and at cost plus 10 percent.

"D. The City must approve and supervise any expansions or additions to the water system.

"E. The City controls the use of all income that is not pledged to repay debt—surplus income must be used to prepay debt or make additions to the system.

"F. Plaintiff is required to furnish the City with annual audits and copies of the reports to the trustee for the bondholders.

"G. Three members of the Medford Water Commission serve as an advisory board to the board of directors of Plaintiff.

"On September 19, 1966, the City approved the indenture and the form of bond of Plaintiff. The indenture fixes the amount of money that may be borrowed by the issuance of bonds; requires that income be used to pay debt service and to create cash reserves; and pledges both the income and property of Plaintiff to the repayment of the debt.

"Based on the provisions in Plaintiff's Articles and Bylaws, the provisions of the Operating Agreement, and the fact that the City would become the fee owner of the water system, the IRS on January 16, 1968, issued a ruling that the bonds of Plaintiff had the same status as municipal bonds and that the interest paid bondholders was exempt from federal income taxes.

"Plaintiff has no offices and no employees. The sole function of the three directors of Plaintiff (it has no members) is to assure that Plaintiff carries out its obligations to the trustee for the bondholders.

"When the bonds have been paid Plaintiff must transfer the White City water system to the City without further compensation. [N.B.: The court rejects this legal conclusion and would substitute 'may' for 'must.']

"During the eight years of City operation, the debt has been reduced from $1,300,000 to $790,000 and cash reserves of $243,750 have been established. Bonds in the amount of $320,000 have been prepaid and the total debt will be retired three to five years in advance of the scheduled repayment. As of June 1, 1977, the outstanding debt of plaintiff less reserves was $546,250. The White City water system has a current replacement value of more than $1,800,000.

"Under City operation and management the White City water system has been integrated into the Medford water system and the two operated as a single system. The City currently uses and has plans to use the White City water system to serve City customers outside of White City including the City of Eagle Point.

"The bond indenture that provides for the issuance of the bonds gives the trustee the right to foreclose and sell the water system in the event of default. Before the right of foreclosure is exercised the trustee must notify the City and the City has thirty days to declare its intention of acquiring the system. Upon declaring its intention to acquire the system, the City has six months to complete the purchase.

"The charter for the City of Medford authorizes the City to own and operate water systems and furnish water service within and without the city limits.

"Property taxes on the White City water system have tripled during the eight years of City operation. Property taxes have become a significant operating expense that adversely affects the competitive level of the White City water rates. It was the conclusion of Plaintiff's directors and of the Medford Water Commission advisory members that continued development of White City as an industrial park required the effort to exempt the water system from property taxes."

If exemption is to be granted, it must come within the legislative intent of ORS 307.090(1):

"(1) Except as provided by law, all property of the state and *all public or corporate property used or in-*

[ 278 ]

*tended for corporate purposes of* the several counties, *cities,* towns, school districts, irrigation districts, drainage districts, ports, water districts and all other public or municipal corporations in this state, *is exempt from taxation."* (Emphasis supplied.)

■ Other than fee simple title, can consideration be given to those rights recognized in a purchaser of land under a contract in Oregon, through the doctrine of equitable conversion, and the rights of a beneficiary under a trust (again, an equitable title)? The dictum in *Security Sav. & Trust Co. v. Lane County,* 152 Or 108, 53 P2d 33 (1935), would appear to consider such an interpretation, but only if the city's "beneficial interest is exclusive of all equities of non-exempt persons" (152 Or at 146, 53 P2d at 48), including such nonexempt persons as financial institutions and bondholders. The sparse language of the statute best equates with a title in fee simple. (Compare the statutory language, "owned or being purchased," in such exemption statutes as ORS 307.130, 307.136, 307.145, et seq.)

As a heading for its argument (Pl Trial Brief, 8), plaintiff broadly states that "Oregon precedents hold that property is exempt from taxation if a city has all the beneficial interests of an owner, except for bare legal title, and the property is being used for the city's corporate purposes." Plaintiff does not speak of legal title being vested in the city, of course, under the facts set out above; neither does it speak of "equitable title" in the city, through a theory of trust or of equitable conversion; instead, it uses the phrase "the beneficial interests of an owner."

■■ Plaintiff does not undertake to define specifically the expression "beneficial interest" but it is a term frequently used in legal parlance and has been judicially defined. For example, "beneficial interest" is profit, benefit or advantage resulting from contract or ownership of an estate as distinct from legal ownership or control. *Christiansen v. Dept. of Social Security,* 15 Wash2d 465, 131 P2d 189 (1942). The term "benefi-

[ 279 ]

cial interest" is commonly used to designate the entire interest of a beneficiary of a trust. *Papineau v. Security-First Nat. Bank,* 45 Cal App2d 690, 114 P2d 629 (1941). "The expression 'beneficial use' or 'beneficial ownership or interest' in property is quite frequent in the law, and means, in this connection, such a right to its enjoyment as exists where the legal title is in one person and the right to such beneficial use or interest is in another, and where such right is recognized by law, and can be enforced by the courts, at the suit of such owner or of some one in his behalf. * * *" *Catholic Missions v. Missoula County,* 200 US 118, 127-128, 26 S Ct 197, 200, 50 L Ed 398, 402 (1906).

■ Merely defining "beneficial interest" does not answer the question presented in this case regarding the breadth of the exemption granted in ORS 307.090(1). The question is what minimum part of the legally enforceable bundle of property rights must the city possess to constitute "public or corporate property," within the meaning of ORS 307.090(1). Since a "beneficial interest" can be very large or very small, to say that the city has a "beneficial interest" is of little help. The extent of that interest is crucial, as plaintiff implicitly admits in its heading for its argument: "[P]roperty is exempt * * * if a city has *all* the beneficial interests of an owner, *except for bare legal title, * * *.*" (Emphasis supplied.)

An examination of the plaintiff's exhibits indicates that the city *sells* water to the plaintiff; the city operates the water system as *agent* for the plaintiff, *for a fee*; the city has an option to purchase the property under conditions which it shows no interest in meeting. The revenue bonds issued by plaintiff impose no obligations of any kind upon the city. The -plaintiff's indenture of mortgage to its financier-trustee, including all of its property with small exceptions, binds it to a course of conduct which, if carried out, will put it in a position in a few years to make a gift of its property, free of debt, to the City of Medford. The plaintiff's articles of incorporation,

[ 280 ]

bylaws, indenture of mortgage to the bank, the issuance of revenue bonds, the operating agreement with the City of Medford, and the city's pertinent resolutions, outline a plan enabling the plaintiff to "tender by gift" the subject property to the city in a number of years, debt free.

■ It must be noted and emphasized that the drafters of these several instruments have been careful to eliminate any contractual rights between city and plaintiff other than those specified (purchase and sale of water, city, as agent, to operate the water system for a fee, and city's option to purchase the property by assumption of all indebtedness), and none of these give the city any equitable interests in the property.

■ The oft-reiterated intention of a future gift of the property by the plaintiff to the city gives rise to nothing but a hope, unenforceable in law or equity. (This was intended by the drafters. A "gift" and "consideration" are antithetical.) No legal compulsion finally to make a gift can be inferred from the exhibits.

■ Based upon the foregoing, two conclusions are inescapable: (1) plaintiff retains at least some incidents of ownership and control over the property; and (2) other nonexempt persons (*e.g.,* the bondholders) possess equitable interests in the property. These conclusions demand a denial of the exemption, since the city does not have the incidents of ownership, legal or equitable, so far as can be discovered from the record.

Plaintiff argues that the law is not static and that the substance of the relationship should govern, not the form. "While the form is novel, the incidents of ownership: complete control and an irreversible contractual relationship that will vest legal title in the city, justify a ruling of tax exemption. The courts have gone beyond formalism in these cases. * * *" (Pl Reply Brief, 2.)

The argument is strained. This court cannot approve the plaintiff's description and analysis of the city's "incidents of ownership." The several cases cited by plaintiff are distinguishable and not persuasive under the facts of this suit.

■ The legislature has approved the tax exemption of a privately owned water association which meets the requirements of ORS 307.210 (nonprofit mutual or cooperative water association). Such a statute is an expression of legislative intent which inclines a court to deny efforts to obtain a similar exemption by judicial interpretation.

The fact that the Internal Revenue Service, for federal income tax purposes, treated the plaintiff's revenue bonds as tax exempt is irrelevant (as a nonjudicial interpretation of a substantially different statute).

Plaintiff has cited a number of defendant's Property Tax Law Abstracts, construing ORS 307.090(1), as supportive of plaintiff's theory. These opinions have none of the force or effect of rules or administrative orders. They must be disregarded in any event since they include factual situations which have not been adjudicated and which may subsequently be presented to the court.

Defendant's Order No. A&AU 76-41 is affirmed.

Defendant is awarded its costs and disbursements.